Filed
File Date: 1/23/2019 8:35 PM
Strafford Superior Court
E-Filed Document

## STATE OF NEW HAMPSHIRE

STRAFFORD, SS.

SUPERIOR COURT
219-2019-CV-00041

Jennifer Artesi f/k/a Jennifer Tapscott
173 Beauty Hill Road
Center Barnstead, NH 03225

v.

Demoulas Super Markets, Inc. d/b/a Market Basket
875 East Street
Tewksbury, MA 01876-1495

and

Dennis Labatte
27 Anita Street
Rochester, NH 03867
c/o Demoulas Super Markets, Inc. d/b/a Market Basket
875 East Street
Tewksbury, MA 01876-1495

## COMPLAINT

NOW COMES Jennifer Artesi, f/k/a Jennifer Tapscott, Plaintiff, by and through her

attorney, Law Office of Leslie H. Johnson, PLLC, and complains against Demoulas Super

Markets, Inc. d/b/a Market Basket, and Dennis Labatte, Defendants, and in support hereof states

as follows:

1.  **Ms. Artesi requests a trial by jury.**

2.  Ms. Artesi, a female, brings this action pursuant to the statutory and common laws

of the State of New Hampshire, particularly New Hampshire's law against discrimination, NH

RSA 354-A, et. seq., and Title VII, including for gender discrimination/termination, and hostile

environment, and against the individual Labatte for aiding and abetting the discrimination; and

for disability discrimination/termination and failure to accommodate which are also contrary to

1

NH RSA 354-A, et. seq., and to the Americans with Disabilities Act (ADA), 42 USC §12101, et. seq., as amended, including the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (ADAAA" or "amended Act").  Ms. Artesi also asserts a claim for violation of the FMLA. Ms. Artesi asserts and requests all equitable relief and all damages as allowed by law and particularly under the relevant statutory schemes cited herein.

## VENUE AND JURISDICTION

3.     Venue and jurisdiction are proper as Ms. Artesi worked for Defendant Demoulas, including at the Market Basket location at 60 Tri City Road, Somersworth, County of Strafford, NH 03879.

## PARTIES

4.     Jennifer Artesi, fka Jennifer Tapscott, ("Ms. Artesi" or "Plaintiff"), is a female, of 173 Beauty Hill Road, Center Barnstead, County of Belknap, NH 03225.

5.     Demoulas Super Markets, Inc. d/b/a Market Basket ("Demoulas" or collectively with Labatte as "Defendants"), is a foreign corporation doing business in New Hampshire with a principal office address of 875 East Street, Tewksbury, MA 01876, and owns and operates Market Basket in Somersworth, NH.  Demoulas was the employer of Labatte, Ms. Artesi, and other employees at that location, and is responsible for their actions under the theories of *respondeat superior* and vicarious liability.  Demoulas is also directly liable for the actions of their supervisors.

6.     Dennis Labatte ("Labatte"), a male, was the Store Manager of the Somersworth Market Basket at most times complained of and was a supervisor of Plaintiff ("Ms. Artesi"). Labatte is a male, believed to reside at 27 Anita Street, Rochester, NH 03867; or, alternatively may be reached c/o Demoulas Super Markets, Inc., 875 East Street, Tewksbury, MA 01876.

Labatte aided and abetted Demoulas in committing discrimination, harassment, and creating a hostile, intimidating and offensive work environment for Ms. Artesi, which effected the terms, conditions, and privileges of her employment. Labatte also retaliated against Ms. Artesi. These actions were because of Ms. Artesi's gender (female), and her disability.

7.      On or about 06/22/17, Ms. Artesi filed a timely Charge of Discrimination against Defendants with the New Hampshire Commission for Human Rights, being Charge #EDG(R) 0144-17/16D-2017-00164, which was dually filed with the EEOC. Ms. Artesi removed her Charge from the Commission on or about 12/31/18 to file in Court. Ms. Artesi, through counsel, recently requested a Right to Sue letter from the EEOC, which is a rubber stamp to the withdrawal from the Commission, but because of the government shutdown, received a message back that "[d]ue to the lapse of appropriations, we are currently closed and I am not available to respond to your message.  I will return your email when the government re-opens."  Ms. Artesi expects to receive the Right to Sue letter in the relatively near future, which will complete the administrative process on the federal discrimination and retaliation claims.  Ms. Artesi has exhausted her administrative remedies to the extent possible and is filing this lawsuit within the statutory timeframes.  Ms. Artesi has filed this Complaint with all counts to avoid duplicative pleadings.

## STATEMENT OF FACTS

8.      Ms. Artesi was employed by Demoulas Super Markets, Inc., dba Market Basket for approximately 29 years, from approximately February 1990 until on or about 03/06/17, when she was wrongfully terminated for discriminatory and retaliatory reasons. Ms. Artesi performed her job well at all times and received excellent reviews.

9.      The Market Basket at which Ms. Artesi worked during most times relevant to this

Complaint is located at 60 Tri City Road, Somersworth, NH 03879. Prior thereto, Ms. Artesi

had worked in the Rochester Market Basket.

10.      Ms. Artesi was discriminated against on the basis of her gender and because of

her disability and/or perceived disability as further outlined below. Ms. Artesi was a qualified

person with a disability, and had a disability, was regarded as having a disability and/or had a

record of having a disability. At all times Ms. Artesi was able to perform her job with or without

reasonable accommodations.

11.      In approximately April/May 2006, while Ms. Artesi and Labatte were both

working at Demoulas's store in Rochester NH, Ms. Artesi had been out sick with the flu. When

Ms. Artesi returned to work, Labatte said, "How was your vacation?" insinuating she did not

have the flu at all. Labatte then gave Ms. Artesi a hard time because she was wearing pants with

side pockets. However, when Ms. Artesi named another employee who was also wearing pants

with side pockets, Labatte yelled, "We're not talking about her!" Ms. Artesi and Labatte's

conversation became heated and he went to management and stated he did not want her in the

store any longer. Ms. Artesi was transferred to Defendant Demoulas's store in Somersworth NH

by the next day.

12.      In approximately 2012, Labatte was transferred to Demoulas's store in

Somersworth NH. On his first day there, he walked by Ms. Artesi and said to the manager

showing him around, "How many times does she call in each week?" Defendant Labatte's

harassment of Ms. Artesi promptly commenced on the very first day he began working at the

Somersworth store. This Complaint gives examples of harassment and discrimination and is not

all inclusive.

13.      On or about the 03/26/14, Ms. Artesi had to undergo a (female) surgery due to

4

various complications she was experiencing. Shortly after returning to work, Ms. Artesi was subjected to harassment on the basis of disability/perceived disability and gender with comments made by Labatte, including but not limited to the following:

      a.     "You're all worn out…Too old."

      b.     "If you had a kid, it wouldn't be right."

      c.     "Good morning ladies. Oh you too, Jenn."

14.     On or about 03/30/16, Ms. Artesi had another (female) surgery which required her absence from work until on or about 05/16/16. Unfortunately, approximately 2 weeks after returning to work, Ms. Artesi pulled a muscle at work and was placed back out of work for approximately 2 weeks and returned to work in mid-June 2016.

15.     In Spring/Summer 2016, Tim Shea became the new District Produce Supervisor for the Somersworth store.

16.     In approximately early June 2016, Ms. Artesi was again subjected to harassment on the basis of disability/perceived disability and gender (these comments refer to her surgery) with comments by Labatte, including but not limited to the following:

      a.     "What are you good for now?"

      b.     "What guy would want you now?"

      c.     "You're not all right."

17.     On or about 09/18/16, Ms. Artesi got married. Upon returning to work after her wedding, Ms. Artesi was subjected to harassment by Labatte with comments including, but not limited to, the following:

      a.     "You'll always be Tapscott" (Ms. Artesi's maiden name.)

      b.     "How long do you think it's going to last? It won't be long." (This

comment referred to Ms. Artesi's marriage.)

    c.    "Poor guy." (This comment referred to Ms. Artesi's husband.)

    d.    In addition, Ms. Artesi was told by another employee that Labatte said:

        i.    "Her husband is using her for her insurance."

        ii.    "She's had so many relationships. She's a slut."

18.    In addition, Ms. Artesi suffered other discrimination and/or retaliation by Labatte including, but not limited to, the following:

    a.    Checking Ms. Artesi's time card punches while others were knowingly milking the clock, but he would not check theirs.

    b.    Issuing a warning to Ms. Artesi for not having her hair net on correctly (some hair was hanging out of the net), while other employees were not even wearing their hair nets, which was against company policy, but Labatte did not speak to them to correct their hair nets;

    c.    Attempting to humiliate Ms. Artesi by saying, "Put your hair net on. Jerry's not here to impress." (Jerry was another manager.)

    d.    Ms. Artesi was also informed Labatte made the following comments:

        i.    "Ms. Artesi has an alcohol problem."

        ii.    "I think she's drinking during lunch.

        iii.    When Ms. Artesi had lunch with a male co-worker: "What's up with those two? I think they have something going on."

        iv.    "I want her gone."

        v.    "She's a hypochondriac."

19.    Because Labatte was the Store Manager, Ms. Artesi was afraid that if she reported

his inappropriate actions that she would lose her job. Ms. Artesi did, however, tell Jerry Paquette, Assistant Store Manager, on several occasions what Labatte said or did to her. Mr. Paquette would simply shake his head in disgust and/or refer to Labatte as being very unprofessional. Ms. Artesi also informed Mandy Barnum, Produce Manager and Ms. Artesi's direct supervisor, what Labatte said or did to her. Ms. Barnum instructed Ms. Artesi to "write stuff down." Even through Ms. Artesi reported many of Labatte's actions and comments to two managers, Labatte's inappropriate actions continued, apparently neither addressed nor corrected by Demoulas.

20.     On or about 12/29/16, Ms. Artesi was hospitalized for a medical condition that constitutes a disability. Ms. Artesi was not permitted to have or use a telephone or to contact anyone outside of the hospital. Therefore, on or about 12/30/16 at approximately 6 AM, Ms. Artesi's husband contacted Demoulas and spoke with David James, a co-worker of Ms. Artesi. Because Ms. Barnum was not in yet, Ms. Artesi's husband called again at 6:15 AM and spoke with Mr. James, reiterating that his wife had been hospitalized and therefore would not be in to work. Ms. Artesi's husband asked Mr. James to relay this information to Ms. Barnum immediately upon her arrival to work.

21.     On or about 01/03/17 at approximately 9:30 AM, Gary (Ms. Artesi's uncle) hand-delivered to Mr. Paquette a doctor's note dated 01/02/17 confirming Ms. Artesi had been hospitalized and that her discharge date was unknown at the time.

22.     On or about 01/04/17, Jeannine Miller, Ms. Artesi's case worker at the facility where she was an inpatient, contacted Demoulas (Rachel in HR) and requested FMLA paperwork on Ms. Artesi's behalf. After her conversation with Rachel, Ms. Miller relayed to Ms. Artesi that "everything was all set." On or about 01/09/17, Demoulas provided the FMLA paperwork to be filled out by the provider.

7

23.     Ms. Artesi's doctor completed the FMLA paperwork and submitted it to

Demoulas via fax on or about 01/12/17. The FMLA paperwork indicated Ms. Artesi would be

out of work from 12/30/16 to 02/06/17. It was clear from both the fax cover sheet and the FMLA

paperwork that Ms. Artesi was hospitalized in Florida.

24.     On or about 01/13/17 Demoulas wrote a letter to Ms. Artesi informing her that her

FMLA leave would expire on 01/23/17 and that she must return to work by 01/23/17. Ms. Artesi

did not receive the letter because she was in a Florida hospital, of which Demoulas was aware,

and that Ms. Artesi was not expected to be released until on or about 02/06/17 pursuant to the

FMLA paperwork that had been submitted.

25.     Ms. Artesi was not discharged from the hospital until 02/08/17.

26.     On or about 02/10/17, Ms. Artesi's husband contacted Demoulas to update it on

Ms. Artesi's status, that she had been released from the hospital but not yet released to return to

work. Ms. Artesi's husband spoke with Labatte who falsely stated he had not heard anything

from Ms. Artesi for 8 weeks.

27.     On or about 02/15/17, at a follow-up appointment with her doctor, Ms. Artesi was

released to return to work effective 03/06/17 which release was mailed to Demoulas.

28.     On or about 02/28/17, Ms. Artesi called Demoulas and spoke with Mr. Paquette to

find out when she was scheduled to work. Mr. Paquette stated he believed she was on the

schedule but that she would need to speak with Labatte to confirm. Given the hostile manner in

which Labatte treated Ms. Artesi, she instead decided to come in to work on 03/06/17, the date

her doctor released her to return to work.

29.     Sometime shortly after 03/01/17, Ms. Artesi received a letter dated 03/01/17 from

Demoulas stating her health insurance, life insurance, and dental insurance had all been

8

terminated effective 02/18/17. This was Ms. Artesi's first notice that she had purportedly been terminated and after Mr. Paquette had told her he thought she was on the schedule. Up to the present time, Ms. Artesi is not aware of her actual termination date.

30.     Because Ms. Artesi's insurances were canceled, she called Demoulas and spoke with Betsy Pellitier/HR, asking her why her insurances had been canceled. Ms. Pellitier directed Ms. Artesi to contact her supervisor. Ms. Artesi asked, "Did I get fired?", to which Ms. Pellitier again directed Ms. Artesi to contact her supervisor.

31.     On or about 03/06/17, after coming in to work, Ms. Artesi was approached by Linda Quint, a co-worker, who asked, "What happened to you? DJ and I thought you were in rehab."  Since only the employees at the main office and Labatte were made aware of the reason for Ms. Artesi's absence, one of them had to have informed Ms. Quint and Mr. James that Ms. Artesi was at a facility. Demoulas violated HIPPA and other privacy rights by disclosing Ms. Artesi's personal medical information to other employees who should not have been privy to details about her medical condition or treatment.

32.     On or about 03/06/17, shortly after Ms. Artesi punched in for work, Labatte asked her to come with him into his office. Once in the office, Labatte asked Ms. Artesi why she thought she still had a job, and that "we haven't heard anything," "it was disrespectful you didn't call," and that she had abandoned her job, claiming they didn't know if she was alive or dead. However, during the meeting, Labatte acknowledged he had received all of her paperwork (referring to her medical records and FMLA paperwork on his desk), including the 01/02/17 doctor note and the 02/22/17 doctor letter stating Ms. Artesi could return to work on 03/06/17. Ms. Artesi was then directed to go home and that Tim Shea, a supervisor, wanted to talk with her and Labatte would call to let her know the time of the appointment.

33.     At approximately 3:30 PM on 03/06/17, Ms. Artesi met with Mr. Shea, Labatte with Crystal Faucher present as a witness. Mr. Shea stated that because of Ms. Artesi's lack of communication with the company and taking a lot of time off, including exhausting her FMLA, she no longer had a job with the company. Ms. Artesi told Mr. Shea that she had been in regular contact with the store through submission of medical documentation. Ms. Artesi believes Labatte had been withholding information from Mr. Shea; and, because Mr. Shea had only begun working as District Produce Supervisor for the Somersworth store since the Summer of 2016, he had not had many dealings with Ms. Artesi to know that she was a loyal, hard-working employee. Ms. Artesi asked Mr. Shea, "There's no spot for me in 72 stores?" and "After 29 years that's it?" Mr. Shea confirmed the decision was final. Ms. Artesi then asked when she was terminated to which Mr. Shea replied, "Sometime last week".

34.     Still in shock that Ms. Artesi was actually terminated, Ms. Artesi's husband reached out to the owner of the company. On or about 03/10/17, Ms. Artesi's husband spoke with Joseph Schmidt, who is believed to work directly under the owner, Mr. Demoulas. Ms. Artesi's husband explained what had happened and that his wife simply wanted her job back. Mr. Schmidt said he would look into it.

35.     On or about 03/18/17, Ms. Artesi spoke with Mr. Schmidt, reiterating much of what her husband had already stated and again asked for her job back. Ms. Artesi was told by Mr. Schmidt that he would look into it, that the Produce Supervisor, Michael McGuire was on vacation and he would contact her after he met with that supervisor.

36.     Upon information and belief, it was not until about 03/18/17 that Mr. Shea, for the first time, asked Mr. James whether in fact Ms. Artesi's husband had contacted him on 12/30/16 about Ms. Artesi being hospital and he affirmed the contact had occurred.

37.    On or about 03/28/17, Mr. Schmidt called Ms. Artesi and stated they were not going to take her back.

38.    On or about 03/29/17, Ms. Artesi contacted Demoulas and requested a written termination notice to clarify the date of her termination. Demoulas refused the request, instead claiming that Ms. Artesi quit.

39.    Upon information and belief, Demoulas transferred Labatte to its store in Seabrook NH, however he was not demoted.

40.    It should be noted that it is almost impossible to be fired from a Demoulas store. Demoulas routinely keeps people employed who are believed to have missed up to half of their shifts, as this had been Ms. Artesi's observation during her 29 years of employment with Demoulas.

41.    Upon information and belief, in approximately 2016, another employee had been out of work and extremely exhausted her FMLA leave for both her own medical conditions as well as those of family members, however, she was not terminated.

42.    Every year Demoulas gives a March bonus to each of its employees.  Ms. Artesi was entitled to approximately $4,000 in bonuses which she never received, presumably because she was purportedly terminated prior to 03/01/17.

43.    Defendants' discrimination against, harassment of and retaliation against Ms. Artesi has caused her damages. Ms. Artesi claims all damages and equitable relief allowed by law.

44.    Ms. Artesi claims damages including but not limited to liberal/enhanced compensatory damages, punitive damages, lost wages and benefits (past and future),  damages for emotional distress, embarrassment, humiliation, aggravation, loss of her job title and duties,

loss of status, anxiety, loss of sleep, aggravation, embarrassment, loss of reputation, and other ongoing physical and emotional symptoms, attorney fees, costs, all pre-judgment and post-judgement interest, and an amount to compensate Ms. Artesi for any negative tax consequences that result from any judgment or decision.

45.     Ms. Artesi also requests all equitable relief to which she may be entitled, including but not limited to reinstatement, training for Demoulas's employees, an apology, and appropriate discipline of Labatte up to and including his termination.

## COUNT I
## DISABILITY DISCRIMINATION/ HOSTILE WORK ENVIRONMENT AND FAILURE TO ACCOMMODATE
## NH RSA 354-A, et seq. (Demoulas)

46.     Ms. Artesi incorporates herein each and every allegation elsewhere in the Complaint as if fully set forth herein, and further states as follows:

47.     The condition for which Ms. Artesi was hospitalized in December 2015 – February 2016 constituted a disability within the meaning of the ADA, as amended, and NH RSA 354-A. This condition affected Ms. Artesi's activities of daily living, including to concentrate, and her ability to work.

48.     Ms. Artesi's brief leave was a reasonable accommodation for her position, from which she promptly tried to return from work, but was only temporarily allowed to be at work before being fired.   Defendant allowed Ms. Artesi to be absent from work for her hospitalization, accepted paperwork throughout her hospitalization, and then claimed that they hadn't heard from her.

49.     The conditions for which Ms. Artesi required surgeries, were temporary disabilities, which impacted her ability to work, and also permanently impacted her reproductive functions.

50.     These conditions, singly or in combination, affected Ms. Artesi's activities of daily living. Alternatively, Ms. Artesi was perceived as disabled, or had a record of having a disability.

51.     Ms. Artesi asserts that the treatment she received and observed, as described herein related to her disabilities (statements, failure to allow her to return to work/firing her, failure to accommodate), were because of her disabilities and she was impermissibly discriminated against and suffered a hostile environment based upon her disabilities, or perceived disabilities, all contrary to NH RSA 354-A, et. seq. and the ADA/ADAAA which prohibit discrimination, harassment, hostile environment and terminating someone on the basis of their disabilities, and also require a reasonable accommodation.

52.     For example, as to statements, please see paragraph 11 above referencing harassment of Ms. Artesi by Labatte with regard to Ms. Artesi being out sick from work with the flu and her attire, and paragraph 12, statements made by Labatte about Ms. Artesi on his first day at the Somersworth, NH store.  Also see, paragraph 13 above referencing harassment of Ms. Artesi by Labatte upon her return to work after undergoing surgery due to various medical complications she was experiencing.

53.     Ms. Artesi claims the disability discrimination/ hostile environment described above caused her damages as set forth herein. Ms. Artesi claims all damages and equitable relief as allowed by law.

## COUNT II
## DISABILITY DISCRIMINATION/ HOSTILE WORK ENVIRONMENT AND FAILURE TO ACCOMMODATE
## ADA/ADAAA (Demoulas)

54.     Ms. Artesi incorporates herein each and every allegation elsewhere in the Complaint as if fully set forth herein, and further states as follows:

55.     As set forth above in Count I, these actions violated the ADA/ADAAA.

56.     Ms. Artesi claims the disability discrimination/ hostile environment as described above, has caused her damages as set forth herein. Ms. Artesi claims all damages and equitable relief as allowed by law.


## COUNT III
## GENDER DISCRIMINATION/HOSTILE ENVIRONMENT
## NH RSA 354-A, et seq.  (Demoulas)

57.     Ms. Artesi incorporates herein each and every allegation elsewhere in the Complaint as if fully set forth herein and further states as follows:

58.     NH RSA 354-A, et. seq., and Title VII, prohibit discrimination on the basis of gender, including a hostile environment, whether statements and actions are based on sexual harassment, of comments based on a person's gender, or hostility towards someone because of their gender.

59.     Ms. Artesi suffered all of these as set forth above. For example, see paragraphs 13 – 18 above; par. 17 referencing harassment of Ms. Artesi by Labatte upon her return to work after having gotten married; and paragraph 18 above referencing harassment of Ms. Artesi by Labatte with regard to treatment of Ms. Artesi that was different than the way he treated Ms. Artesi's co-workers.

14

60.     Ms. Artesi claims that the treatment she received as described herein was on the basis of her gender, and constituted sexual harassment and gender discrimination, all contrary to NH RSA 354-A, et. seq, and Title VII.

61.     Ms. Artesi claims the gender discrimination/ hostile environment caused her damages as set forth herein. Ms. Artesi claims all damages and equitable relief as allowed by law.

## COUNT IV
## GENDER DISCRIMINATION/HOSTILE ENVIRONMENT
## TITLE VII (Demoulas)

62.     Ms. Artesi incorporates herein each and every allegation elsewhere in the Complaint as if fully set forth herein, and further states as follows:

63.     As set forth above in Count I, these actions violated Title VII.

64.     Ms. Artesi claims the gender discrimination/ hostile environment caused her damages as set forth herein. Ms. Artesi claims all damages and equitable relief as allowed by law.

## COUNT V
## AIDING AND ABETTING DISCRIMINATION
## UNDER RSA 354-A, et. seq. (Labatte)

65.     Ms. Artesi incorporates herein each and every allegation elsewhere in the Complaint as if fully set forth herein, and further states as follows:

66.     Mr. Labatte as an individual, aided and abetted his employer Demoulas, in discriminating against Ms. Artesi, as described elsewhere in this complaint, which is contrary to NH RSA 354-A, et. seq.

67.     Ms. Artesi claims that Labatte's aiding and abetting of his employer's gender discrimination/hostile environment, on the basis of both gender and disabilities, as well as the failure to accommodate based on disabilities, as described herein, caused her damages as set forth herein. Ms. Artesi claims all damages and equitable relief as allowed by law.

## COUNT VI
## RETALIATION
## NH RSA 354-A, et seq.
## And the ADA/ADAAA
## (Both Defendants)

68.     Ms. Artesi incorporates herein each and every allegation raised elsewhere in the Complaint as if fully set forth herein and further states as follows:

69.     Defendants retaliated against Ms. Artesi, including firing her, for exercising her rights under the ADA, and RSA 354-A, et. seq., and by claiming that Ms. Artesi abandoned her job.

70.     Defendants' retaliation was contrary to RSA 354-A, et. seq., and Defendant Demoulas' retaliation was also contrary to the ADA, as amended by the ADAAA.

71.     Said actions, and failures to act, caused damages to Ms. Artesi as described herein.   Ms. Artesi claims all damages and equitable relief as allowed by law.

## COUNT VII
## VIOLATION OF FAMILY MEDICAL LEAVE ACT
## (Demoulas)

72.     Ms. Artesi incorporates herein each and every allegation raised elsewhere in the Complaint as if fully set forth herein and further states as follows:

73.     Ms. Artesi observed how other co-workers with disabilities were treated as to their taking of FMLA leave, including her supervisor's negative comments towards these co-

workers. It was clear to Ms. Artesi that Labatte did not like people who took FMLA leave and that he retaliated against such individuals.

74.     Ms. Artesi took FMLA leave from approximately 12/30/16 through 3/06/17, and filled out the required paperwork, and understood from Defendant Demoulas that she was granted FMLA leave.

75.     Ms. Artesi was retaliated against for using FMLA leave by Defendant Demoulas in terminating her, claiming they had not heard from her.

76.     Other individuals who had not received FMLA leave, including many that did not show up for many of their shifts, for no good reason, were not terminated.

77.     Defendant Demoulas' violation of the FMLA was willful and knowing, thus justifying an award of liberal compensatory and liquidated (double) damages.

78.     Said actions in violation of the FMLA caused damages to Ms. Artesi as described herein.   Ms. Artesi claims all damages and equitable relief as allowed by law.

WHEREFORE, Ms. Artesi respectfully prays that this Honorable Court and/or a jury order the following relief:

A.     Back wages, together with lost fringe benefits and any other benefits, including increased retirement benefits, which Ms. Artesi would have earned had she not been terminated, but followed the usual path of job promotion;

B.     Future wages, fringe benefits, loss of earning capacity and other benefits;

C.     Reasonable attorney fees, interest and costs;

D.     Enhanced/liberal compensatory, liquidated, and double damages;

E.     Punitive damages;

F.    An amount to be awarded by the Court to make up for any adverse tax

consequences due to any judgment or award;

G.    All damages which are available under the above-cited laws;

H.    All available pre-judgment and post-judgment interest;

I.    All equitable relief which may be available; and,

J.    Such other and further relief as is just and equitable.


Respectfully Submitted

**JENNIFER ARTESI, Plaintiff**
By her attorney

Dated: January 23, 2019            By:    _____/s/ LESLIE H. JOHNSON_____
                                          Leslie H. Johnson, Esquire – NH Bar #5545
                                          Law Office of Leslie H. Johnson, PLLC
                                          PO Box 265
                                          Center Sandwich NH 03227
                                          (603) 284-6600
                                          leslie@lesliejohnsonlaw.com

**Jen Elliott**

| | |
|---|---|
| **From:** | NHCourtsNo-Reply@tylerhost.net |
| **Sent:** | Wednesday, January 23, 2019 8:36 PM |
| **To:** | Jen Elliott |
| **Subject:** | Notification of Service, Filing, or Court Documents for Case: , 579792, for filing Complaint - Civil |



# Notification of Service, Filing, or Court Documents

Case Number:
Case Style:
Envelope Number: 579792

This is a notification that a document has been served, filed, or issued by the court. Please click the link below to retrieve the document.

| Filing Details | |
|---|---|
| **Case Number** | |
| **Case Style** | |
| **Date/Time Submitted** | 1/23/2019 8:35 PM EST |
| **Filing Type** | Complaint - Civil |
| **Activity Requested** | Complaint - Civil |
| **Filing Description** | Complaint |
| **Filed By** | Mona Tardif |
| **Service Contacts** | Jennifer Artesi: <br><br> Jennifer Elliott (jen@lesliejohnsonlaw.com) <br><br> Leslie Johnson (leslie@lesliejohnsonlaw.com) <br><br> Mona Tardif (mona@lesliejohnsonlaw.com) |

| Document Details | |
|---|---|
| **Served Document** | Download Document |
| **>This link is active for 180 days.** | |

If the link above is not accessible, copy this URL into your browser's address bar to view the document:
https://newhampshire.tylerhost.net/ViewServiceDocuments.aspx?ADMIN=0&SID=004e1ff4-c291-4fdc-ba86-89bdbedd3993

**Important:** This is how you will be contacted regarding cases. Please add NHCourtsNo-Reply@tylerhost.net in your address book.

For further assistance, please contact the court.
1-855-212-1234
This message was automatically generated. Please do not reply to this email.