UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| Jennifer Artesi | ) | |
| | ) | |
| v. | ) | Civil Action No.: 1:19-CV-00214-SM |
| | ) | |
| DeMoulas Super Markets, Inc. d/b/a | ) | |
| Market Basket, and | ) | |
| Dennis Labatte | ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

This matter arises out of Plaintiff's employment with the Defendant DeMoulas, and her separation from employment following the exhaustion of her FMLA leave. In December of 2016, Plaintiff was hospitalized in Florida for in-patient treatment. Her husband contacted DeMoulas and shared that Plaintiff was hospitalized and would not be in work. In January, Plaintiff's healthcare provider completed FMLA paperwork that she would be out of work until February 6. Plaintiff had already exhausted the majority of her FMLA leave time in 2016, and had only 1 week remaining. Though her FMLA leave expired on January 7, DeMoulas allowed Plaintiff unpaid leave through January 23, 2017. Though Plaintiff was discharged from the hospital on February 8, 2017, she did not speak to the Defendants until February 28, 2017. On March 1, 2017, Plaintiff received notification that her employment had been terminated, and was told the same when she arrived at DeMoulas on March 6, 2017.

Plaintiff asserts that her separation from employment constituted disability discrimination under the ADA and RSA 354-A, gender discrimination under Title VII and RSA 354-A, retaliation under RSA 354-A, that Mr. LaBatte aided and abetted discrimination, and that the

1

Defendants violated her rights under the FMLA. However, the undisputed facts, even taken in the light most favorable to Plaintiff, do not support her claims. Plaintiff was afforded generous leave time beyond that required by the law, and was terminated from her position for abandoning her job. At no point did the Defendants discriminate against Plaintiff for any reason. The Defendants now move this Court to grant summary judgment in their favor on all of Plaintiff's counts.

## STATEMENT OF UNDISPUTED FACTS

1. Plaintiff worked at DeMoulas from approximately 1990 until her separation from employment in 2017. *Complaint* 8.

2. During her tenure at DeMoulas, Plaintiff made multiple requests for FMLA leave. Affidavit of Dona Feeney, Esq. ¶ 3, Deposition of Jennifer Artesi 122:5-9.

3. In 2000, Plaintiff sought treatment in a rehabilitation center; she was employed at DeMoulas at the time and was provided FMLA leave time. Artesi Dep. 59-61:18-2.

4. In 2005 Plaintiff was provided FMLA leave. Artesi Dep. 115:8-11. Affidavit of Joseph Schmidt, ¶ 3 Ex. A, October 13, 2005 Letter to Jennifer (Tapscott) Artesi.

5. In 2011, Plaintiff was provided leave because of a shoulder injury while at DeMoulas. Artesi Dep. 116:16-18; Aff. Schmidt ¶ 4 Ex. B. June 27, 2011 Letter to Jennifer (Tapscott) Artesi.

6. In 2013 Plaintiff was provided leave because of an injury to her left shoulder. Artesi Dep. 119:7-18. Aff. Schmidt ¶ 5 Ex. C August 8, 2013 Letter to Jennifer (Tapscott) Artesi.

7. Years ago, Mr. LaBatte, Plaintiff's supervisor at DeMoulas, commented that Plaintiff "wasn't right" in reference to her mental illness. Aretsi Dep. 165-6:11-18; 167:3-7.

8. Other employees made comments "like a joke" about Plaintiff's mental illness. Artesi

Dep. 167:8-13.

9. In 2016, Plaintiff was out of work from approximately March or April of 2016 through June 10, 2016. Artesi Dep. 120-121:16-7.

10. Plaintiff was out on leave following surgery for a hysterectomy. Artesi Dep. 167:14-16.

11. Plaintiff was granted time off after that surgery. Artesi Dep. 165:1-10.

12. Following her hysterectomy, Mr. LaBatte made demeaning comments to Plaintiff on approximately three occasions. Artesi Dep. 167-168:23-4; 169:4-20.

13. Plaintiff understood that DeMoulas had an anti-harassment policy. Artesi Dep. 194:1-3.

14. Plaintiff never reported to any supervisors the comments Mr. LaBatte made to her. Artesi Dep. 194:4-17.

15. Plaintiff never sought an accommodation for her mental disability. Artesi Dep. 161:18-23.

16. Plaintiff received letters regarding the status of her employment from DeMoulas while out on leave. Artesi Dep. 118:14-17.

17. From December 29th through January 3rd or 4th Plaintiff stayed in a residential treatment center called Palm Partners in West Palm Beach Florida. Artesi Dep. 74:15-20.

18. Plaintiff did not make an application for leave from DeMoulas during the time she was at Palm Partners. Artesi Dep 75:1-5.

19. On January 2, 2017, one of Plaintiff's health care providers drafted a letter indicating that Plaintiff would be out of work until further notice. Aff. Schmidt, ¶ 6 Ex. D, January 2, 2017 Letter from David Yarian.

20. Upon arriving at Palm Partners, Plaintiff called her husband and asked that he call Market Basket and tell them she would not be in. Artesi Dep. 77:3-10.

21. Plaintiff told her husband to call Mandy, her manager at DeMoulas. Artesi Dep. 79:11-15.

22. On or about January 9, 2017, Plaintiff signed a leave request form for December 30, 2016 through February 6, 2017. Artesi Dep. 125-126:13-3.

23. This FMLA leave request form indicated that Plaintiff was "unable to perform any of his/her job functions due to the condition." Aff. Schmidt ¶ 7 Ex. E FMLA Form.

24. At the time of her leave on December 30, 2016, Plaintiff had only one week of FMLA available due to her use of FMLA leave time in 2016. Aff.. Schmidt ¶ 8 Ex. F January 9 2017 Letter to Plaintiff; Aff. Schmidt ¶ 9 Ex. G January 13, 2017 Letter.

25. On January 13, 2017, DeMoulas issued a letter to Plaintiff indicating that her employment status with DeMoulas would be at the discretion of the company if she did not return by January 23, 2017. Aff. Schmidt ¶ 9 Ex. G.

26. Following her time at Palm Partners, Plaintiff went to a different facility in Florida called G&G Facility. Artesi Dep. 85:8-16.

27. Plaintiff remained at G&G until February 8, 2017. Artesi Dep. 86:6-11; 89:1-6.

28. On February 2, Plaintiff entered a different hospital for treatment for pancreatitis, and returned to G&G on February 4. Artesi Dep. 95:2-7; 96:21-22.

29. Neither plaintiff nor anyone on her behalf notified DeMoulas about the Palm Partners location or her further inpatient stay at G&G. Artesi Dep. 87:3-11.

30. While she was at inpatient treatment in Florida, Plaintiff's husband was getting her mail in New Hampshire. Artesi Dep. 90:3-10.

31. Plaintiff was allowed to use her phone while at G&G. Artesi Dep. 110:21-23.

32. Plaintiff returned to New Hampshire on or about February 8, 2017. Artesi Dep. 86:10-11.

33. Plaintiff's husband called DeMoulas to let them know she was back in New Hampshire. Artesi Dep. 143:3-6; 143-144:22-2.

34. On February 22, Plaintiff's healthcare provider authored a note that Plaintiff could return to work on March 6, 2017. Aff. Schmidt, ¶ 10 Ex. H February 22, 2017 Letter.

35. Plaintiff did not communicate with DeMoulas until February 28. Artesi Dep. 137:2-15; 138:7-14.

36. Plaintiff did not communicate with DeMoulas earlier as she assumed she was still covered under FMLA. Artesi Dep. 141:17-22.

37. On March 1, 2017, DeMoulas sent to Plaintiff a letter indicating that her employment with the company was terminated. Aff. Schmidt ¶ 11 Ex. I March 1, 2017 Letter.

38. Plaintiff arrived for work on March 6, 2017 and was told she was terminated. Artesi Dep. 207-209:14-11.

39. On or about June 22, 2017, Plaintiff initiated this action by filing a charge of discrimination with the New Hampshire Commission for Human Rights. Aff. Feeney, ¶ 4 Ex. J Charge of Discrimination.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine if the evidence allows a reasonable jury to resolve the point in favor of the non-moving party and a fact is material if it is one that might affect the outcome of the suit. *Coach, Inc. v. Sapatis*, 994 F.Supp. 2d 192, 197 (D. N.H. 2014). In ruling on a motion for summary judgment, the evidence is examined in the light most favorable to the non-moving party. *Id*. The party seeking summary judgment must first identify the absence of any genuine dispute of material

fact. *Rideout v. Gardner*, 123 F. Supp. 3d 218, 227 (D. N.H. 2015). In determining what a material fact is, the Court "safely can ignore conclusory allegations, improbable inferences, and unsupported speculation." *Carroll v. Xerox Corp.*, 294 F.3d 231, 237 (1st. Cir. 2002).

## ARGUMENT

### I. The Defendants Did Not Discriminate Against Plaintiff on the Basis of Disability

Plaintiff asserts that she was discriminated against on the basis of her disability. The undisputed facts, taken in the light most favorable to Plaintiff, show that at no point did the Defendants discriminate against Plaintiff on the basis of any disability.

#### A. Plaintiff's Termination Was Not Based Upon Disability Discrimination

Title I of the ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination includes adverse employment actions such as not making reasonable accommodations or denying employment opportunities.

A disability discrimination claim is examined under the *McDonnell Douglas* burden shifting framework. A Plaintiff must prove that she was (1) disabled within the meaning of the ADA; (2) was able to perform the essential functions of her job with or without accommodation; and (3) was subject to an adverse employment action based at least in part on her disability. *See e.g. Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 82 (1st Cir. 2008). If a Plaintiff can make out a *prima facie* case of disability discrimination, the burden shifts to the employer who must provide a legitimate, non-discriminatory basis for its employment action. Finally, the burden shifts back to the Plaintiff, who must proffer evidence that the non-discriminatory justification is "mere pretext, cloaking discriminatory animus." *Freadman v. Metro. Pop. & Cas. Ins. Co.*, 484

F.3d 91, 99 (1st Cir. 2007).

For the purposes of this motion, the Defendants concede that Plaintiff was disabled within the meaning of the ADA and that she was subject to an adverse employment action, but note that Plaintiff was unable to perform the essential functions of her job with or without accommodation at the time of her termination. Plaintiff's own leave request form indicated that at the time, she was completely unable to perform <u>any</u> of her job functions. (SUF 23)[1] This leave request form indicated that she would be unable to do so until at least February 6, 2017, beyond the time Plaintiff had available to use for FMLA.

Even if the Plaintiff could make out a *prima facie* case, the Defendants terminated Plaintiff for non-discriminatory reasons: she abandoned her job. The undisputed facts show that Plaintiff had been afforded leave for medical conditions and/or disabilities multiple times in years past. (SUF 2-6) It was only after exhausting her leave – and after being afforded a two week extension of unpaid leave – and after no communication from Plaintiff to DeMoulas, that DeMoulas terminated Plaintiff's employment. (SUF 24-25; 32-36) While DeMoulas had initially received information that Plaintiff would be able to return to work by February 6, Plaintiff did not return on February 6 and did not provide additional information about her leave and potential return to work until at the earliest February 22, two weeks later, the date her physician authored a note about her potential return to work for March 6. (SUF 22; 34) There is no discrimination in terminating an employee who has exhausted all leave, remains out of work, and does not communicate with the employer about her current condition or potential return to work. For those reasons, the Defendants are entitled to summary judgment on this count.

### B. Plaintiff Was Not Subject to a Hostile Work Environment

To prevail on a disability harassment claim, a Plaintiff "must prove that (1) she has a

---

[1] The Defendants cite to their Statement of Undisputed Facts ("SUF").

disability, (2) she was subjected to a hostile environment, and (3) the hostility was directed at her because of her disability." *Posteraro v. RBS Citizens, NA*, 159 F. Supp. 3d 277, 288 (D.N.H. 2016). To support a claim of hostile work environment, a Plaintiff must point to evidence from which a rational jury could find that her workplace was "permeated with discriminatory intimidation, ridicule, and insult" that was "sufficiently severe or pervasive to alter the conditions" of her "employment and create an abusive working environment." *Id*. (internal citations omitted).

The undisputed facts make clear that Plaintiff cannot hope to prove the elements above and show that her workplace was permeated with discriminatory actions that were sufficiently severe to alter the conditions of her workplace. At worst, all Plaintiff can point to are a few scattered comments across years of employment. (SUF 7-8; 12) Just as in *Posteraro*, the evidence here, taken in the light most favorable to Plaintiff, "falls far short of the constant mockery or constant ridicule sufficient to prove a claim of disability based harassment." 159 F. Supp. 3d at 289. Anti-discrimination laws "do not establish a general civility code for the workplace." *Quiles-Quiles v. Henderson*, 439 F3d 1, 7 (1st Cir. 2006). As the Courts have noted, the

> "workplace is not a cocoon, and those who labor in it are expected to have reasonably thick skins – thick enough, at least, to survive the ordinary sling and arrows that workers routinely encounter in a hard, cold world." Suarez v. Pueblo Intern, Inc., 229 F.3d 49, 54 (1st Cir. 2000).

Consequently, an "employee may not be unreasonably sensitive to his or her working environment." *Calhoun v. Acme Cleveland Corp.*, 798 F.2d 559, 561 (1st Cir. 1986). The undisputed facts fall far short of that required to support a claim for hostile work environment as to disability discrimination. As such, the Defendants are entitled to summary judgment on this claim.

### C. The Defendants Did Not Fail to Provide an Accommodation for Plaintiff's Disability

Employers are required to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A); N.H. Rev. Stat. Ann. § 354-A:7, VII(a). When a Plaintiff alleges a failure to accommodate, "the plaintiff must show that the employer knew about the plaintiff's disability and did not reasonably accommodate it." *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 89 (1st Cir. 2012). "A plaintiff must explicitly request an accommodation, unless the employer otherwise knew one was needed." *Id*. "An accommodation request must be sufficiently direct and specific, and it must explain how the accommodation is linked to plaintiff's disability." *Id*. The Plaintiff "bears the burden of proving that a proposed accommodation would enable her to perform the essential functions of her job." *Richardson v. Friendly Ice Cream Shop*, 594 F.3d 69, 81 (1st. Cir. 2010). In addition, the Plaintiff must show the request is "feasible for the employer under the circumstances." *Tobinv. Liberty Mut. Inc. Co.*, 553 F.3d 121, 136 (1st. Cir. 2009).

At no point did Plaintiff seek an accommodation for a disability. (SUF 15) While the Defendants expect that the Plaintiff may point to her FMLA leave requests as some type of accommodation requests, those requests were for a complete absence from work, not for any sort of accommodation that would allow her to perform the essential functions of her job. (SUF 19; 22-23). Given her complete inability to perform her job functions, no accommodation would have been reasonable.

While some Courts have considered a limited extension of leave time a reasonable accommodation (*see e.g. Henry v. United Bacnk*, 6868 F. 3d 50 (1st. Cir. 2012)), the undisputed facts show that DeMoulas provided just that, and thus any reasonable accommodation she may be entitled to was provided. Though Plaintiff's FMLA leave time expired on January 7, 2017, DeMoulas allowed Plaintiff leave time until January 23, over two weeks later. (SUF 24-25)

Plaintiff did not report to work, nor communicate with DeMoulas, and after DeMoulas waited over an additional month, it was not until March 1, 2017 that it notified Plaintiff of her termination. (SUF 31-37) The undisputed facts do not support that Plaintiff was denied a reasonable accommodation. Because of this, the Defendants are entitled to summary judgment on this count.

## II. The Defendants Did Not Discriminate Against Plaintiff on the Basis of Gender

Plaintiff asserts that she was discriminated against on the basis of gender in violation of NH RSA 354-A and Title VII. The undisputed facts however, do not support Plaintiff's allegations and instead reveal that at no point did the Defendants discriminate against Plaintiff on the basis of gender.

### A. Plaintiff's Termination Was Not Based Upon Gender Discrimination

Plaintiff's Title VII claim and RSA 354-A claim on gender rise and fall together, as they both are analyzed under the *McDonnell Douglas* burden-shifting framework. *See Madeja v. MPB Corp.*, 821 A.2d 1034 (N.H. 2003). The *McDonnell Douglas* framework first requires the Plaintiff to establish a *prima facie* case of discrimination by producing evidence that shows "1) she was a member of a protected class, 2) she was qualified for her position, 3) she was subjected to an adverse employment action, and 4) the position remained open or was filled by someone with similar qualifications." *Pina v. Children's Place*, 470 F.3d 785, 795 (1st Cir. 2014). Upon a showing of a *prima facie* case, the defendant has the burden of production to produce "evidence that the challenged employment action was taken for a legitimate, non-discriminatory reason." *Johnson v. University of Puerto Rico*, 714 F.3d 48, 53-54 (2013). If the defendant supplies such evidence, the plaintiff is left with the burden to prove "by a preponderance of the evidence that the employer's proffered reason is pretextual and that the actual reason for the adverse

employment action is discriminatory." *Id*. at 54.

Although there is no formula to determine whether a proffered reason is pretext, the "inquiry focuses on whether the employer truly believed its stated reason for taking action adverse to the employee." *Kelley v. Corr. Med. Servs. Inc,* 707 F.3d 108, 116 (1st Cir. 2013). The Plaintiff then must elucidate "specific facts which would enable a jury to find that the reason given was not only a sham, but a sham intended to cover up the employer's real motive… discrimination." *Villanueva v. Wellesley College*, 930 F.2d 124, 127 (1st Cir. 1991). A plaintiff can demonstrate pretext through "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons such that a factfinder could infer that the employer did not act for the asserted non-discriminatory reasons." *Pina* 470 F.3d at 797. The plaintiff bears the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 143 (2000).

For the purposes of this motion, the Defendants do not contest that Plaintiff can meet a *prima facie* case: she was 1) a woman; 2) was qualified for the position; 3) was terminated; and 4) the position was filled by someone with similar qualifications. Though she can make a *prima facie* case, Plaintiff can make no more. Beyond a first appearance, the undisputed facts show that Plaintiff was terminated for legitimate, non-discriminatory reasons: she abandoned her job. Plaintiff can only point to a few disparate comments relating to her gender across years of employment, none of which occurred near the time of her termination. (SUF 12)

As the Defendants reason for Plaintiff's termination is non-discriminatory, it falls upon Plaintiff to prove that this reason is pre-textual. This she cannot do. Plaintiff cannot point to any facts which support that DeMoulas's termination had anything to do with her gender. The

reasons for her termination are laid out clearly in the correspondence from her employer: Plaintiff exhausted her leave time and remained out of work, with little to no communication with DeMoulas, for over a month longer. (SUF 24-25; 35-37) A month's absence from work has nothing to do with Plaintiff's gender. Her request for FMLA had nothing to do with her gender but instead her health conditions.

Absent facts which support any sort of connection between Plaintiff's gender and her termination, Plaintiff cannot support her claim, and the Defendants are entitled to summary judgment on this count.

**B. Plaintiff Was Not Subject to a Hostile Work Environment**

To prevail on a claim of a sexually hostile work environment, Plaintiff must prove

> (1) that she is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established. *Ponte v. Steelcase, Inc.*, 741 F.3d 310, 320 (1st Cir.2014)

An employer is only liable if the harassment results in "tangible employment action against the employee." *Agusty-Reyes v. Dept. of Edcu. Of P.R.*, 601 F.3d 45, 53(1st Cir. 2010). An employer can also be liable if it does not take reasonable care to prevent or correct promptly any sexual harassing behavior and the Plaintiff took advantage of any preventative or corrective measures available to the employee. *Perez-Cordero v. Wal-Mart P.R., Inc.*, 656 F.3d 19, 20 (1st Cir. 2011).

The Defendants concede for the purposes of this motion that Plaintiff is a member of a protected class and that the comments made by LaBatte may have been unwelcome to Plaintiff. However, Plaintiff cannot show that the harassment was severe or pervasive or that the sexually objectionable conduct was objectively and subjectively offensive to a degree that a reasonable

person would find it hostile or abusive. When analyzing the severe and pervasive requirement, Courts look to "the severity of the conduct, its frequency, where it is physically threatening or not, and whether it interfered with the victim's work performance." *Gerald v. Univ. of P.R.* 707 F.3d 7, 18 (1st Cir. 2013). As noted above, Plaintiff can only point to a few disparate comments relating to her gender across years of employment. (SUF 12) The conduct complained of now by Plaintiff is neither severe nor pervasive. Like *Posteraro*, the comments complained of here were sporadic and did not involve physical threats. 159 F.Supp 3d at 287. This stands in stark contrast to cases in which employers have been found liable, where "disgusting comments, conversations and treatment were continuing and consistent and occurred every day." *Id*. Nothing Plaintiff has identified is "egregious enough" to evince a hostile work environment. *Ponte v. Steelcase Inc.*, 741 F.3d 310 (1st Cir. 2014)

In addition, the undisputed facts show that Plaintiff never reported these comments to any supervisor, and never afforded herself the protections of DeMoulas's anti-harassment policy. Absent that, the Defendants cannot be liable for these infrequent comments which occurred over years of employment. For those reasons, the Defendants are entitled to summary judgment on this count.

### III. **Mr. LaBatte Did Not Aid or Abet Any Discrimination**

N.H. RSA 354-A:2 XV(d) indicates that unlawful discriminatory practices include "aiding, abetting, inciting, compelling or coercing another or attempting to aid, abet, incite, compel, or coerce another to commit an unlawful discriminatory practice…" Unlawful discriminatory practices include discharging an employee or discriminate in compensation, terms, conditions, or privileges of employment. N.H. RSA 354-A:7. An individual may be held liable for aiding and abetting unlawful employment discrimination under RSA 354-A:2 and :7. *US Equal Empl. Opp.*

*Com'n v. Fuller Oil Co.*, 134 A. 3d 17, 21 (NH 2016). However, in order for an individual to be liable, the Plaintiff must prove "that the individual aided and abetted an unlawful discriminatory practice <u>committed by an employer</u>." *Id*. (emphasis added). "Thus, if there is no unlawful discriminatory practice by an employer, there can be no individual employee liability for aiding and abetting." *Id*.

The only adverse employment action taken by DeMoulas was Plaintiff's termination. However, as set forth at length above, the undisputed facts and all inferences therefrom show that there was no discriminatory practice by DeMoulas. On multiple occasions DeMoulas provided Plaintiff with FMLA leave time. (SUF 2-6) DeMoulas did not discriminate against Plaintiff on the basis of gender or disability. Plaintiff was terminated following the exhaustion of her FMLA leave and her abandonment of her job. (SUF 24-25; 35-37) Absent any discrimination of DeMoulas, the claim against Mr. LaBatte for aiding and abetting also fails, and the Defendants are entitled to summary judgment on this claim.

**IV. Plaintiff Did Not Report Any Harassment, and Her HRC Complaint Came After her Termination, Making it Impossible for The Defendants to have Retaliated Against Plaintiff**

To prove retaliation under her state and federal claims, Plaintiff must show that (1) she engaged in protected conduct; (2) she was subject to an adverse employment action; and (3) there was a causal connection between the first two factors. *Posteraro* 159 F.Supp. 3d at 290. Evaluation of such a claim relies upon a modified version of the McDonnell Douglas approach. *Id*. If the Plaintiff can make a *prima facie* case of retaliation, the burden shifts to the defendant, who must offer a legitimate, non-retaliatory reason for the adverse employment action. *Id*. If the defendant can offer such a reason, the burden shifts back to the Plaintiff who must show that the proffered reason is pretext.

14

Critically, here, Plaintiff cannot even make out a *prima facie* case of retaliation. Plaintiff did not engage in any protected conduct under the ADAAA or RSA 354-A until <u>after</u> her termination for abandoning her job. Plaintiff never reported any harassment to her supervisors. (SUF 13-14) Plaintiff never requested any accommodation to allow her to perform the essential functions of her job. (SUF 15) It was not until 3 months <u>after</u> her termination that Plaintiff filed a complaint with the New Hampshire Commission for Human Rights. (SUF 39) Given the timing, there is no way in which the Defendants could have retaliated against Plaintiff for availing herself of her rights under the ADAAA and RSA 354-A. Absent any chance of a causal connection between Plaintiff reporting harassment or seeking relief under ADAAA or RSA 354-A, Plaintiff's claim for retaliation fails and the Defendants are entitled to summary judgment on this count.

### V.     The Defendants Did Not Retaliate Against Plaintiff for Using FMLA by Terminating Her Employment Weeks After her FMLA Leave Expired

The FMLA provides to a qualified employee up to twelve weeks of leave due to the birth of a child of the employee or to care for a child of the employee, or to care for a spouse, child, or parent of the employee if the spouse child or parent has a "serious health condition." 29 U.S.C. § 2612(a)(1)(A),(C). An employer may not retaliate against an employee for exercising any right provided by the FMLA. 29 U.S.C. § 2615(a)(2). If an employee's employment ends in the course of taking FMLA leave the employer's responsibility to continue FMLA leave ceases. 29 C.F.R. 825.216(a)(1).

To make a *prima facie* case of FMLA retaliation, an employee must show that (1) she availed herself of a protected FMLA right; (2) she was adversely affected by an employment decision; and (3) there was a causal connection between her protected conduct and the adverse employment action. *Id.* While an employee may not be penalized for exercising her FMLA rights, "an employee may nevertheless be discharged, not promoted, or denied benefits for

15

independent reasons during or after her taking of FMLA leave." *Carrero-Ojeda v. Autoridad de Energia Electrica*, 755 F.3d 711, 719 (1st Cir. 2014).

For the purposes of this motion, the Defendants concede that initially, Plaintiff availed herself of a protected FMLA right and that she was later adversely affected by an employment decision. Critically, what Plaintiff cannot prove – and what the undisputed facts contradict – is any assertion that Plaintiff's termination is causally connected to protected conduct. At the time of her termination, Plaintiff's FMLA leave was expired and she did not return to work nor communicate with DeMoulas about her return to work. (SUF 24-25; 35-37). In short, she had abandoned her job. Plaintiff can only point to the temporal proximity between her initial use of her remaining FMLA leave time and her later termination. Temporal proximity is but one factor from which an employer's bad motive can be inferred it is not enough by itself – especially if the surrounding circumstances undermine any claim of causation. *Wright v. CompUSA, Inc.*, 352 F.3d 472, 478 (1st Cir. 2003).

Like the Plaintiff in *Carrero-Ojeda*, Plaintiff here can point to "no facts beyond the timing of her discharge – e.g. no negative comments, complaints, or expressions of reluctance by her supervisors or co-workers about her FMLA leave-taking, no discussion of her FMLA leave status in performance reviews, etc…" to support a claim for retaliation. 755 F.3d at 720. *See also Donald v. Sybra, Inc.*, 667 F.3d 757, 763 (6th Cir. 2012) (finding temporal proximity between FMLA leave taking and discharge in addition to supervisor's one negative comment did not establish employer's bad motive at summary judgment). In fact, the undisputed facts show just the opposite: Plaintiff was afforded FMLA leave time on multiple occasions and returned to work after every leave except the last. (SUF 2-6) It was only Plaintiff's abandonment of her job in early 2017 – and not her use of FMLA leave time – that led to her termination.

The undisputed facts above undermine any claim of causation. As of December 2016, Plaintiff had only seven days of FMLA time remaining. (SUF 24-25) DeMoulas in fact provided her additional time beyond her allotment of FMLA leave, providing her with an additional two weeks until January 23, 2017 to return to work. (SUF 25) Plaintiff remained out of work all of that time, and did not attempt to communicate with her employer about her job until February 28, 4 weeks after her leave had expired. (SUF 35) The undisputed facts support that Plaintiff was afforded all leave time warranted under the law. There is no retaliation where an employer provides an employee their allotment of FMLA leave time plus an additional two weeks.

## **CONCLUSION**

The Defendants did not discriminate against Plaintiff for any reason. Plaintiff was provided all FMLA leave afforded to her under the law, and in fact was provided additional leave time by DeMoulas. Mr. LaBatte did not aid or abet any discrimination as no discrimination occurred. For the foregoing reasons, the Court should grant summary judgment in favor of the Defendants and dismiss all counts of the complaint with prejudice.

Respectfully submitted,

DeMoulas Super Markets, Inc.
and
Dennis LaBatte

By their Attorneys,
MAGGIOTTO, FRIEDMAN, FEENEY & FRAAS, PLLC

Dated: December 30, 2019          By:     /s/ Dona Feeney
                                          Dona Feeney, Esq. (N.H. Bar #12854)
                                          58 Pleasant Street
                                          Concord, NH   03301
                                          (603) 232-5469 or 225-5152
                                          dfeeney@mffflaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 30, 2019 a copy of the foregoing has been served through the court's ECF filing system on Leslie H. Johnson, Esq.

                                             */s/ Dona Feeney*
                                             Dona Feeney, Esq.