UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Jennifer Artesi ) | |
| ) | |
| v. ) | Civil Action No.: 1:19-CV-00214-AJ |
| ) | |
| DeMoulas Super Markets, Inc. d/b/a ) | |
| Market Basket, and ) | |
| Dennis Labatte ) | |

### REPLY TO PLAINTIFF'S OBJECTION DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

NOW COME the Defendants, by and through their counsel, and submit this Reply to Plaintiff's Objection[1] to Motion for Summary Judgment.

**Introduction**

Defendants' reply to Plaintiff's arguments while attempting to avoid undue repetition. Defendants focus on the error in Plaintiff's fundamental premise of her Objection, which is that her FMLA leave did not run out in early January of 2017—something she never raised in any of her prior pleadings (see Complaint, Doc 1-1, Count VII Violation Family Medical Leave Act, ¶¶ 72-78); in discovery, or during her deposition. Plaintiff exhausted her available FMLA leave in early January 2017 because from March to June of 2016 she had taken approximately eleven weeks of FMLA leave, as she testified at deposition. In addition, DeMoulas ("DSM") records indicate that Plaintiff received her 2016 FMLA leave documentation via certified mail from DSM on April 1, 2016 and May 28, 2016, as further detailed below.

**I.  PLAINTIFF WAS NOT TERMINATED DUE TO DISCRIMINATION AS SHE ABANDONED HER JOB IN 2017 AFTER HER AVAILABLE FMLA LEAVE WAS EXHAUSTED**

---

[1] To the extent Plaintiff refers to a self-created chronology (Doc. 18-18) that contains references to statements by others, the Court should reject these unsworn inclusions.

Plaintiff incorrectly argues (for the first time in her objection) that she had not taken FMLA leave in 2016 and therefore had not abandoned her job in 2017 when she was absent beyond her available leave. (Cf. Complaint ¶¶ 14, 41, 75). She testified at deposition that she took FMLA leave in 2016 and DSM's records show that the 2016 leave was taken under the FMLA.[2] (Artesi Depo. pp. 120-121; Supp. Aff. Of Joseph Schmidt, Exhibit J, Redacted 2016 FMLA records).

Plaintiff acknowledges that she took FMLA leave in other years, while working for DSM, and that she was familiar with the FMLA process, having availed herself of it on four prior occasions. (Artesi Depo. pp. 122: 5-7; 44:2-10; 113:20-23; 114:1-4; Supp. Aff. Schmidt, Exhibit K, Artesi signed acknowledgements of FMLA process 2009—2016 contained within personnel file). These prior FMLA leaves included time in 2000 for inpatient care (Artesi Depo. pp. 60-61); October 2005 (Artesi Depo. pp. 114-115); June 2011for shoulder surgery (Artesi Depo. p. 116:1-22); and August 2013 for a torn bicep (Artesi Depo. pp. 119-120). Time card records corroborate her FMLA leaves in 2011 and 2013, as well as 2016. (Supp. Aff. Schmidt, Ex. L.) She states that she took FMLA leave "[P]robably [for] all my surgeries." Artesi Depo. p. 122: 8-9. The leave taken in 2016 was when she was out for a hysterectomy. Plaintiff's Objection, p. 20 ("[I]n the middle of 2016, …[she] was out for her hysterectomy."). Her hysterectomy was a surgery and, therefore, she was out for FMLA leave in the middle of 2016.

Plaintiff's statement in her affidavit that she does not "recall" her leave in 2016 being designated as FMLA leave (Doc. 18-2, ¶ 9) should be set aside as inconsistent with her previous

---

[2] Plaintiff's claim that [T]he …Artesi deposition…refer[s] only to "leave," not "FMLA leave," is plainly inaccurate. *See* Doc. 18-1, Plaintiff's Memo, p. 2, para 4. The questioning of Plaintiff in her deposition regarding leave at DeMoulas clearly refers to "FMLA" leave. *See* Depo Doc. [16-4], p. 122:2-9.

sworn deposition testimony and 2016 FMLA records. Any other such information should also be set aside and not considered for the same reason. *See*, *e.g*., Aff. of Mona Tardiff, ¶ 3.

"[W]here a party has given clear answers to unambiguous questions in discovery, that party cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, unless there is a satisfactory explanation of why the testimony [has] changed." *Escribano-Reyes v. Professional Hepa Certificate Corp.*, 817 F.3d 380, 386 (1st Cir. 2016). *See also Gallagher v. Unitil*, 14-cv-20-SM, Opinion No. 2015 DNH 179, 9/17/15 at p. 3 (non-moving party cannot create a factual dispute by submitting a contradictory affidavit, without adequate explanation, citations omitted). Plaintiff has not offered an explanation of why she testified under oath that she generally took FMLA leave for her other surgeries (including a torn rotator cuff and torn bicep tendon), without qualifying that she did not do so for another major surgery in 2016, and why she would deny that now. Plaintiff now asserts that she does not remember any FMLA forms prior to 2017, but she signed a return receipt for one of those forms and received another by certified mail that her husband signed for. *See* Supp. Aff. Schmidt Ex. K.

Defendants attach exhibits ("Ex.") to show that Plaintiff did, in fact, request FMLA in both March and May of 2016. *See* Supp. Aff. Schmidt, Ex. J. The exhibits also show that Plaintiff took leave per her request.

Defendants note that while they believed in good faith that they had produced the 20 pages of FMLA records as part of all other personnel-related discovery, Plaintiff had <u>never</u> asserted prior to filing her Objection that she had not consumed 11 of her 12 weeks of FMLA leave available to her. Her Complaint reviews her pleas to the employer to be reinstated to her

job. *See* Complaint, ¶¶ 33-36.[3] These four paragraphs take up an entire page of the Complaint, record her multiple conversations with multiple managers and the company owner, yet not once indicate that she should be reinstated because she had additional FMLA leave to cover the time that she was out of work. Additionally, ¶ 14 of her Complaint asserts that she was out of work from 3/30/16 through 5/16/16 and again for additional weeks in May 2016 2016 related to the same condition. ¶ 41 of her Complaint inferentially acknowledges that she exhausted her available FMLA leave. Finally, Count VII, ¶¶. 72-78 of her Complaint claims only retaliation for utilizing FMLA time, not that she was eligible for more time than she received.

The facts show that Plaintiff undeniably exhausted her FMLA leave in January 2017. Plaintiff signed yearly acknowledgements regarding her familiarity with FMLA leave. (Supp. Aff. Schmidt, Ex. K, 2009—2016 signed acknowledgment forms). The 2016 FMLA leave notice sent to Plaintiff specifically indicates that the leave is calculated on a "'rolling'" twelve month period measured backward from the date of any FMLA usage." (Doc. 16-9, p. 2). A letter to Plaintiff specifically advised her that her leave expired on January 7, 2017 but gave her additional time to return to work. The letter also notified her that if she did not return to work by January 23, 2017 her "<u>FMLA leave will be expired</u>." (Doc. 16-11, p. 2,) emphasis added. Accordingly, when her leave expired in January 2017 and when she failed to call her employer until February 28, 2017, her absence from work was an abandonment of her job.

Plaintiff makes two fundamental errors on the FMLA expiration issue. One is that she "thought" that FMLA accrued as of January 1 each year. (*See* Doc. 18-1, Plaintiff's Memorandum of Law, p. 5, ¶ 24.1). Here, she is simply mistaken, a the FMLA form indicates that it is a "rolling" twelve-month period for FMLA usage. The other is that Plaintiff states that

---

[3] And, as noted above, her deposition indicates she took FMLA when she had surgery, such as in 2016 when she needed months of leave.

her husband set aside her mail. (Doc. 18-1, p. 6, ¶ 30). DSM took sufficient steps to put Plaintiff on notice of her leave by sending her mail to her legal address. DSM could not know that Plaintiff would not instruct her husband to open her mail, or to have a practice of not doing so as is asserted. *Id.* Defendants are not responsible for Plaintiff not having mail sent to her legal address forwarded to her or read to her when received at that address. It approaches willful blindness to be out of work and ignore mail from one's employer. Although Plaintiff says she was incommunicado while at the Palms facility (Doc. 18-2, Artesi Affidavit, ¶ 15), she could make calls by January 4, 2017, and testified at deposition that she returned to New Hampshire on February 8, 2017 yet never called anyone at DSM until February 28, 2017 when she first phoned one of her managers at the store. (Artesi Aff. ¶ 15; Artesi Depo. pp. 86:18-23; 97:17; 136:17-23; 138:7-14; 142:2-14; 143-144). The only reason she didn't know that her FMLA ran out on January 7 was she failed to ask her husband to look at her mail.

Accordingly, Plaintiff was appropriately separated from her employment due to her abandoning her position by being absent from that position while lacking FMLA to cover her absence.

## II.     THERE WAS NO RETALIATION FOR PLAINTIFF'S FMLA REQUEST

Plaintiff was not retaliated against for filing for FMLA as she had previously filed for FMLA on multiple occasions, without retaliation. As noted, Plaintiff testified that she took FMLA leave "[P]robably [for] all my surgeries." Artesi Depo., 122: 8-9. She neither complains about, nor was she retaliated against before for her prior FMLA leave. As also noted, she cannot revise her prior testimony. *See Escribano-Reyes, supra.* She took FMLA before. She does not claim prior retaliation. Perhaps most importantly, Plaintiff cites no facts to show that Defendants

retaliated against her <u>because</u> she took FMLA leave. *See* Plaintiff's Memo of Law, §V, pp. 23-24.

Defendants, conversely, have shown that Plaintiff exhausted her available FMLA leave in 2017 and was terminated after she was gone from work without leave. Defendants also show that Plaintiff was given proper FMLA notice in 2016.[4] *See* Supp. Aff. Schmidt Ex. J, K and L. Further, Plaintiff states no facts to show that she could have actually structured her leave differently to avoid exhausting her FMLA in 2017. She makes only a conclusory statement that she would have done things differently had she known of her dwindled FMLA.[5] The only evidence she has presented is that she was out of work, and needed to be, for all of January and February 2017.[6] Plaintiff's "burden to present evidence that it would have been <u>medically</u> possible for [her] to structure [her] leave differently distinguishes [her] case from *Conoshenti* …[remainder of citation omitted]." *Bellone v. Southwick-Tolland Regional School Dist.*, 748 F.3d 418, 424 (1st Cir. 2014), emphasis added. Here, because Plaintiff does not show that it was medically[7] possible to restructure her leave differently, she could not have a claim for FMLA interference even if she had not gotten the proper FMLA notice – which she received, in any event.

---

[4] Plaintiff's argument in §IC of her Memo of Law is therefore inapposite.
[5] Plaintiff testified that a friend of hers, Marc Plante, "just went ahead" and found someplace for her to seek treatment because she had been thinking about it and she asked him, and circumstances made her need treatment at that time. (Plaintiff Depo. pp. 55-56; 58). There is no indication from her sworn testimony that her admission to the Florida facility was under consideration for any period of time; rather her testimony establishes that it was an urgent admission based on her condition. Mr. Plante made the arrangements, got the facility to arrange air travel, and then drove her to the airport once the facility confirmed it could take her in. This all took place in one evening. *Id.*
[6] One hardly takes the step of going to a lock-down rehabilitation facility (the Palm Partners, Doc. 18-2, ¶ 15) where one is held unable to communicate without significant need.
[7] Plaintiff submits via affidavit that she would have not gone to treatment on 12/29/16 if she'd known she was short of FMLA leave. Two issues arise: one, this is not <u>medical</u> evidence that she could forego treatment; two, she was <u>given</u> notice of the status of her prior FMLA leave, via certified mail that she received in March and May of 2016. *See* Exhibits J and K to Supplemental Schmidt Affidavit.

### III. IT WAS REASONABLE FOR DSM TO THINK THAT PLAINTIFF WAS NOT RETURNING TO WORK.

Plaintiff did not request any accommodation in the form of further leave time in January 2017 when DSM notified her that leave expired on January 7, 2017 and she would be required to return to work by January 23, 2017. This despite having availed herself of FMLA leave on at least four prior occasions, and after signing seven years of FMLA notice acknowledgements. Nevertheless, DSM extended her leave beyond January 7, 2017, to January 23, 2017. *See* Doc. 16-11. After that time, Plaintiff was not in direct contact with DSM regarding her circumstances for several weeks. Although she had limited communications out of the Palm Partners facility, she left there on January 4, 2017. (Doc. 18-2, Artesi Affidavit, ¶ 16). She was "allowed to use a telephone" as of January 4. (*Id.*, ¶15.[8]) Despite this, she did not herself contact DSM to ask for accommodation. Her husband called DSM on February 10, 2017, almost a month after she could use a phone, to advise DSM that she could not return to work. (Doc. 18-18, Plaintiff's chronology, p. 1). Plaintiff's doctor wrote a note for a later return to work, dated February 22, 2017; however, the return to work clearance was not until March 6, 2017, some two months after the expiration of her available leave time. *Id.*, p. 1. Plaintiff herself did not call anyone at DSM until February 28, 2017, twenty days after she had returned to New Hampshire on February 8th. (Artesi Depo. pp. 86:18-23; 97:17; 136:17-23; 142:2-14).

DSM's actions were at all times reasonable and not violative of any applicable state or federal laws. (*See* argument in Defendants' Memo of Law, Doc. 16-1, at p. 9.)

---

[8] Plaintiff's assertion that her husband did not open her mail while she was away is unhelpful to her for reasons noted in §I. If nothing else, when Plaintiff was in phone communication, she should have made arrangements to know the contents of her employer's written communication with her, by some means.

## IV.     PLAINTIFF WAS NOT SUBJECT TO DISCRIMINATION BASED ON GENDER OR DISABILITY.

Plaintiff claims but offers no facts to support that she was discriminated against based on gender and/or disability. Her claims are dispelled by: 1) her past history of use of FMLA leave, and 2) her testimony relating to DSM's treatment of similarly situated employees.

As to her past history, we know that Plaintiff took FMLA leave "[P]robably [for] all my surgeries." (Artesi Deposition, pp. 122: 8-9), and more specifically on four prior occasions in 2005, 2010, 2011 and 2013. (Plaintiff Depo. pp. 60:21-23; 61:1-2; 114:10-23; 115:1-23; 116-117; 119:7-23; 120:1-2; Supp. Aff. Schmidt Ex. J, K and L).

As to similarly situated employees, Plaintiff testified that a disabled woman, "Theresa G.,"[9] had several serious medical conditions, "extremely exhausted her FMLA leave," and was not terminated. Artesi Deposition, 156:5-12. Plaintiff had pleaded this differential treatment in her Complaint. Doc. 1-1, ¶41. But Ms. G's gender and rather similar disability directly disproves Plaintiff's assertion that Defendants discriminate based on these grounds.

## V.     PLAINTIFF WAS NOT SUBJECT TO A HOSTILE WORK ENVIRONMENT DUE TO EITHER DISABILITY OR GENDER.

Plaintiff fails to state facts to support claims for hostile work environment based on either disability or gender, or both together. In addition to the standard set forth in Defendants' initial Memo of Law, Defendants note that "[T]he conduct must be so severe or pervasive that it amounts to a change in the terms and conditions of employment." *Burns v. Johnson*, 829 F.3d 1, 18 (1st Cir. 2016), citation, internal bracketing and quotation marks omitted. Plaintiff does not state facts to show that the conduct alleged amounted to a change in the terms and conditions of employment.

---

[9] This name has been referred to by first name and initial only and redacted in part from the supporting documentation submitted to protect privacy.

Plaintiff admits that the statements she asserts occurred over a period of years thus diluting the pervasiveness of the alleged statements. The three year range she claims shows the comments to be occasional and intermittent, not pervasive. Perhaps more important, she cites to hearsay comments which she herself was never aware of during her employment. She attributes seven of the comments to Mr. Labatte, but has no first-hand knowledge of these comments.[10] She claims these were related to her by Ms. Barnum – after her employment ended. Having learned of the purported comments only <u>after</u> leaving the job, those comments by definition could not be a change in the "terms and conditions of employment." Accordingly, those comments should not be considered for both of those reasons.

The comments asserted, particularly those that are left after eliminating those that are hearsay and that came after Plaintiff was no longer employed, are neither pervasive nor do they amount to a change in the terms and conditions of employment. Further, although Plaintiff argues that this is a jury question (*see* Plaintiff's Memo, Doc. 18-1, p. 22), this Court reviews the issues on summary judgment to determine if the evidence meets the minimum level required to muster a claim. For determining this for in hostile workplace cases "a <u>court</u> must mull the totality of the circumstances, including factors such as the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's work performance.' " *Maldonado-Catala v. Municipality of Naranjito*, 876 F.3d 1, 10 (1st Cir. 2017), quoting *Noviello v. City of Boston*, 398 F.3d 76, 92 (1st Cir. 2005), emphasis added, bracketing original, other citations omitted.

---

[10] Note that although she numbers the comments 1-16, number 9 is not a comment, but is a reference to Ms. Barnum speaking to her. Numbers 10-16 thereafter are all comments allegedly told to her by Ms. Barnum.

**CONCLUSION**

For reasons set forth above, and in their initial Motion and Memorandum of Law, Defendants request the Court grant summary judgment on all counts as to all Defendants.

                Respectfully submitted,

                DeMoulas Super Markets, Inc.
                And Dennis LaBatte

                By their Attorneys,
                MAGGIOTTO, FRIEDMAN, FEENEY & FRAAS, PLLC

Dated: February 18, 2020      By:   */s/ Dona Feeney*
                                    Dona Feeney, Esq. (N.H. Bar #12854)
                                    58 Pleasant Street
                                    Concord, NH   03301
                                    (603) 232-5469 or 225-5152
                                    dfeeney@mffflaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on February 18, 2020 a copy of the foregoing has been served through the court's ECF filing system on Leslie H. Johnson, Esq.

                                    */s/ Dona Feeney*
                                    Dona Feeney, Esq.