UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Jennifer Artesi,
    Plaintiff

v.                                          1:19-cv-00214-SM

DeMoulas Super Markets, Inc. d/b/a
Market Basket and Dennis Labatte,
    Defendants

**PLAINTIFF'S SURREPLY TO DEFENDANTS' REPLY TO PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES Jennifer Artesi, Plaintiff, by and through her attorney, Law Office of Leslie H. Johnson, PLLC, and submits her Surreply to Defendants' Reply to Plaintiff's Objection to Defendant's Motion for Summary Judgment, and in support thereof states as follows:

**INTRODUCTION**

Plaintiff, and her counsel, relied on the personnel file that had been sent three times, the last time on 2/7/20, which did not contain any 2016, or earlier, FMLA information. And, while Defendants note that Plaintiff received her March and May 2016 FMLA information by certified mail, they do not claim she received the December 2016 FMLA information by certified mail. To the best of Plaintiff's recollection, there was no certified receipt, but in any event, DSM sent it to her NH address when they knew she was in Florida. E.g. Ex. 1, A,H,G. In addition, Plaintiff has been entirely consistent[1] in her sworn statements and complaint, as described below. Ex. 1:9,20; Ex. 3:3.

**I. Plaintiff Did Not Abandon Her Job, and It Was No Undue Hardship To Grant A Reasonable Accommodation[2] and Allow her to Return to Work 3/6/17**
Ms. Artesi's complaint states she took FMLA from 12/30/16 through 3/6/17, that she

---

[1]Ms. Artesi's Affidavit and deposition testimony were consistent that she thought the March and May 2016 leaves were FMLA, but that she did not recall ever being given FMLA paperwork, nor did she remember her doctor completing any. Upon a review of her personnel file, she and her counsel's office found there was no FMLA paperwork for March or May 2016.
[2]Reasonable Accommodation will be referred to as "RA." Exhibit numbers 1-4 referenced herein are to those attached to previous memoranda of law. Plaintiff's will be referred to as "P. Mem."

1

understood it had been granted, and that she was retaliated against for using it. See Comp., 74-75. This is consistent with her affidavit and deposition. Ex. 1:21, Ex. 4,131:15-19. Her testimony has not changed at all.[3] She did not realize it was a "rolling" 12-month period, as opposed to the calendar year. Nevertheless, she kept in touch and requested additional leave time. The letter of 1/13/17 notified Ms. Artesi that her leave expired 1/7/17 (before the 1/13/17 letter), but she would be granted regular leave until 1/23/17, however, it also said that "her employment would "be at the discretion of the company," not that failure to return would be job "abandonment." Ex. 1, Att. C. Furthermore, DSM was responding to the 1/12/17 FMLA request for leave through 2/6/17. Ex. 1, Att. F.

In addition, Defendants distort the evidence in claiming that she failed to call her employer when her leave expired. Reply, p. 4, par. 2. Defendants had already "approved" her leave which was stated to be through 2/6/17. Ex. 1, Att. F. Then, upon her return, Ms. Artesi's husband called on 2/10/17 and told Labatte she was discharged but had not yet been released to return to work, that she needed to see her primary doctor, but hoped to return to work in a couple weeks. Ex.2:7, Ex.3, Att. C. Ms. Artesi saw her doctor on 2/15/17 and on 2/22/17 her doctor's office sent a letter to DSM indicating she could return to work on 3/6/17. Ex.1:34, Att. H. Then on 2/28/17 Ms. Artesi called DSM and spoke with Paquette. Ex.1:35, Ex.3, Att. C.

From 12/30/17 (the date she was hospitalized) to 3/6/17 (the date she was released to return to work) there were 9 contacts made by either Mr. Artesi, the FL hospital, Ms. Artesi, her uncle, or her doctor's office. Ex. 3, Att. C. There is no reasonable construction of the evidence that supports a conclusion that Ms. Artesi "abandoned" her job. She provided all documentation

---

[3] In fact the 4 other FMLA leaves Defendants reference (Reply p. 2, par. 2) were probably FMLA leaves, but again, those records are still missing from the personnel records that Defendants have now produced 3 times, plus a 4th time for the 2016 missing FMLA records. The request for the complete personnel file is still pending.

that was requested. Comp:¶¶ 33-36. This demonstrates that Plaintiff was requesting additional leave time past her 12 weeks. Also see sec. II and III below.

**II.     Defendants Interfered or Retaliated Against Ms. Artesi for Using her FMLA Leave**

DSM sent the FMLA notice to an address which it knew Ms. Artesi was not present at, when it had her phone number and address in Florida, which does not constitute proper FMLA notice. Had Ms. Artesi been reached in Florida, she could have returned by 1/23/17, even though DSM had apparently "approved" her request for leave in a less than clear manner.

As noted, in the affidavits of Mr. and Mrs. Artesi, it was not their practice to open each other's mail, and it is in fact illegal, at least without permission. *See* 18 US Code §1702. Obstruction of correspondence. Defendants did not have to "guess" about whether Mr. and Mrs. Artesi opened each other's mail, as they knew Ms. Artesi was in Florida and planned to be there through at least 2/6/17. Defendant DSM also was in contact with the medical provider and could have called to leave a message for Ms. Artesi with a return date and ultimatum for termination, to which she could have responded by leaving medical treatment. However, the letter indicated her continued employment was discretionary, and based on past practice, e.g. "Theresa G." Ms. Artesi did not believe her job to be in jeopardy. Comp, 41; Ex.4, 156:5-157-4; Ex. 5, Deposition of Mandy Barnum (her direct supervisor), 43:12-15 (people out longer than 12 weeks were not terminated). Also, DSM "approved" her FMLA leave, which she requested through 2/6/17. Ex. 1, Att. F. Defendants claim Ms. Artesi did not contact her employer until 2/28/17, but that is not true; as noted above, there were multiple contacts.

Defendants also claim Ms. Artesi did not show she was medically able to return to work, but that would be their burden to come forward with affirmative evidence that Ms. Artesi was unable to return. *Bellone v. Southwick-Tolland Regional School Dist*., 748 F3d 418, 424 (1st Cir 2014). See also *Conoschenti v. Public Service Electric & Gas Co.,* 364 F3d 135 (3d Cir 2004)

(Plaintiff with shoulder problem could have scheduled leave differently.) As Ms. Artesi stated, if she realized she did not have 12 weeks more FMLA leave starting 1/1/17, she would have just not gone to Florida for treatment. She was in voluntary treatment, which she could leave. She doesn't have to prove she could medically return to work. Not receiving the FMLA notice, where DSM knew she was temporarily located, did interfere with her ability to get back to work, by either 1/7/17 or 1/23/17, the dates they gave her to return without her employment being at their discretion. Ex. 1:21. Clearly, Ms. Artesi did not abandon her job and kept in touch with her employer.

### III. It Was Unreasonable for DSM to Claim They Thought Ms. Artesi Was Not Returning to Work and They Failed to Discuss and Grant the Reasonable Accommodation of Additional Leave Time

Defendants fail to address that additional leave time can be a reasonable accommodation, as if 12 weeks of FMLA is the end of the discussion. *See* P. Mem.[4], pp. 16-19, sec. II.B. There is no reasonable construction of the evidence that indicates Ms. Artesi "abandoned" her job. The fact that she was not terminated until after she returned to work 3/6/17 is undisputed. Not only had Ms. Artesi not received a termination letter, but she reported back to work on 3/6/17 and was then fired. In the termination meeting, Ms. Faucher heard Mr. Shea tell Ms. Artesi she had overused her family leave, and when Ms. Artesi asked if there was anything she could do or if she could go to another store, Mr. Shea told her no. Ms. Artesi asked after 29 years that is it? And Mr. Shea confirmed the decision was final. Ex. 7, Deposition of Cristal Faucher, 13:15-14:23.

Ms. Artesi made approximately 9 contacts to update her employer. To request accommodation, an individual may use "plain English" and need not mention the ADA or use the phrase "reasonable accommodation." *See, e.g., Schmidt v. Safeway Inc.*, 864 FSupp 991, 997 (D

---

[4] P. Mem. is Plaintiff's Memorandum of Law to her Objection to Motion for Summary Judgment.

Or 1994) ("statute does not require the plaintiff to speak any magic words… The employee need not mention the ADA or even the term 'accommodation.'"); *McGinnis v. Wonder Chemical Co.*, 1995 WL 756590 (ED Pa 1995) (employer on notice that accommodation had been requested because: (1) employee told supervisor that his pain prevented him from working; and, (2) employee had requested leave under the Family and Medical Leave Act).

Request for leave through 2/6/17 constitutes a request for an accommodation, as did her husband's call of 2/10/17, and the provision of the 2/22/17 medical note stating she could return to work on 3/6/17. Defendant never contacted her to fire her, and she was not replaced until after she returned to work on 3/6/17. Ex. 5, 17:3-17, 19:21-20:10. Ex. 6, Deposition of David James (current asst. produce manager), 9:1-6. In fact, Barnum (direct supervisor) said she wanted Ms. Artesi back because she was a really fast worker and knowledgeable. Ex. 5, 18:12-23, 22:18-21. Ex. 8, Affidavit 2 of Mona Tardif, ¶¶ 2-3 certifying these exhibits as true and accurate copies. Additional leave was a reasonable accommodation:

> All agree that a leave of absence or a leave extension can constitute a reasonable accommodation under the ADA 'in some circumstances...' And, to be sure, '[w]hether [a] leave request is reasonable turns on the facts of the case.' *García-Ayala*, 212 F.3d at 647 (alterations in original) (quoting *Criado*, 145 F.3d at 443 ). But the fact-intensive nature of the reasonable-accommodation inquiry does not insulate disability-discrimination cases from summary judgment. To the contrary, a plaintiff must show, even at the summary-judgment stage, that the requested accommodation is facially reasonable... And where a plaintiff fails to show facial reasonableness, summary judgment for the defendant is appropriate... So it is here. (some internal citations omitted)

*Echevarria v. Astrazeneca Pharm. LP*, 856 F3d 119, 128 (1st Cir 2017)

As Ms. Artesi repeatedly kept her employer informed, was not fired until 3/6/17, and was not replaced with a full-time worker until after 3/6/17, and there was no abandonment or undue hardship.[5] As noted in P.Mem., showing an undue hardship is Defendants' burden. Ms. Artesi

---

[5]**Ex. 5, 18:9-19**
Q:Okay. But you were able to fill in with a part-time person?/A:Right, but they don't do the same amount of work as she could, with the knowledge that she had.

was discriminated against on the basis of disability, and the failure of Defendants to reasonably accommodate her.

### IV.[6]  Ms. Artesi Was Subjected to Discrimination Based on Gender and Disability

Defendants only cover disability in this section. While Defendant Labatte had been her supervisor years before, he was not her supervisor in 2010 or 2011. Ex. 1:5. However, what was consistent was that during leaves where Defendant Labatte was her supervisor, he made negative statements about it, like "what are you good for now," "what guy would want you now." Ex. 1:10. See P. Mem., pp. 20-21. As to "Theresa G.," there is no evidence of what department she was in, and whether Mr. Labatte directly supervised her, or had a history with her. However, the Theresa G. extended leave does demonstrate extended leaves were apparently not a hardship. See sec. III above regarding extended leave being a RA, and that failure to provide it constitutes disability discrimination.

### CONCLUSION

For the foregoing reasons, and those set forth in Plaintiff's Objection and Memorandum of Law, the Defendants' motion should be denied.

Respectfully submitted,

**JENNIFER ARTESI, Plaintiff**
By her attorney

Dated: March 2, 2020     /s/ LESLIE H. JOHNSON
Leslie H. Johnson, Esquire – NHBA #5545

---

Q:Okay. So it would be good for her to get back to work?/A:Yes.
**Ex. 6, 9:1-6**
Q:Who was filling in for her at that time?/A:We had part-timers, pretty much just the part-timers.
Q:And so did you get another extra part-timer when she was out starting December '16?/A:No.
**Ex. 6, 17:21-18:1-11**
Q:So job abandonment means someone doesn't show up, doesn't call, doesn't provide a doctor's note?/A:Yes.
Q:And they are gone and no one knows where they are, correct?/A:Yes.
Q:Is it your experience at Market Basket that if someone stays in touch with a store, provides notes, that they would be welcomed back?/A:Yes.
[6]As to sec. V of the reply, Plaintiff has stated her case for hostile environment based on gender and disability in P. Mem., pp. 19-22, sec. II. C.

Law Office of Leslie H. Johnson, PLLC
PO Box 265
Center Sandwich, NH 03227
(603) 284-6600
leslie@lesliejohnsonlaw.com

CERTIFICATION

      I hereby certify on this date that I am sending a copy of this document as required by the rules of court. I am electronically sending this document through the court's electronic filing system to all attorneys and to all other parties who have entered electronic service contacts (email addresses) in this case.

      /s/ LESLIE H. JOHNSON
Leslie H. Johnson, Esquire