UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Jennifer Artesi,
Plaintiff

v.                                          1:19-cv-00214-AJ

DeMoulas Super Markets, Inc. d/b/a
Market Basket, and Dennis Labatte,
Defendants

## PLAINTIFF'S REQUEST FOR JURY INSTRUCTIONS

NOW COMES Jennifer Artesi, Plaintiff, by and through her attorney, Leslie H. Johnson,

Esq., and respectfully submits the following Jury Instructions, in addition to standard instructions

on impartiality of Judge, Jury to Consider all the Evidence, the Role of Judge and Jury,

Objections to Evidence (*during and at the end of trial*), Inadmissible and Stricken Evidence,

Credibility of Witnesses, Stipulations of Fact, and any other of the usual instructions.

Ms. Artesi reserves the right to withdraw, modify or supplement the proposed

instructions as required by Defendants' submissions, subsequent Court rulings or decisions, or

because of evidence presented at trial.   Ms. Artesi also reserves her right to object to

Defendants' requests for instructions.

Ms. Artesi's additional requested instructions are as follows:

1.    Nature of the Claim, The Americans with Disabilities Act, As Amended, and New
      Hampshire's Law Against Discrimination

2.    The Family and Medical Leave Act of 1993 (submitted in order to explain Ms. Artesi's
      prior leave status.

3.    A Corporation Acts Through Its Employees

4.    Aiding and Abetting Against Dennis Labatte, Individually

5.    Failure to Accommodate Disability by Granting Reasonable Accommodation and to Enter
      Into Interactive Process

6.    Substance Abuse Disorder, Alcoholism, is a Disability Or Impairment Covered by the
      ADA and RSA 354-A

1

7.      Retaliation for Requesting Reasonable Accommodation

8.      Direct and Circumstantial Evidence

9.      Damages

10.     Damages – Back Pay

11.     Damages – Front Pay

12.     Plaintiff's Duty to Mitigate Damages (Only to be given if Defendant Produces Substantial Evidence of Failure to Mitigate)

13.     Compensatory Damages

14.     Enhanced Compensatory Damages/N.H. RSA 354-A (State Law Disability Discrimination Failure to Accommodate and Retaliation Claims)

15.     Punitive Damages

16.     Willfulness

17.     Difficulty Calculating Damages

18.     Consider Totality of the Evidence

19.     Interrogatories

20.     Deposition Testimony

21.     Categories of Damages Stated on Special Verdict Form

22.     Multiple Theories of Recovery

WHEREFORE, Plaintiff, Ms. Artesi, requests that the above instructions be given by the Court.

Respectfully submitted,
**JENNIFER ARTESI, Plaintiff**
By Her Attorney

Dated: June 11, 2021      By:      /s/ LESLIE H. JOHNSON
Leslie H. Johnson, Esquire – NH Bar No. 5545
LAW OFFICE OF LESLIE H. JOHNSON, PLLC
PO Box 265
Center Sandwich, NH 03227
(603) 284-6600
leslie@lesliejohnsonlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that I have caused a copy of the above to be electronically served through ECF this date to those on the ECF service list.

/s/ LESLIE H. JOHNSON
Leslie H. Johnson, Esquire

**PLAINTIFF'S REQUESTED INSTRUCTION NO. 1**

**NATURE OF THE CLAIM, THE AMERICANS WITH DISABILITIES ACT, AS AMENDED, AND NEW HAMPSHIRE'S LAW AGAINST DISCRIMINATION**

Plaintiff, Ms. Artesi has brought this lawsuit under a federal statute, the Americans with Disabilities Act, as Amended, which I will refer to as the "ADA", and NH RSA 354-A. The ADA is a federal law passed by the United States Congress that prohibits employers, such as DeMoulas from discriminating and retaliating against employees on the basis of disability. Congress found that "many people with physical or mental disabilities have been precluded from [fully participating in all aspects of society] because of discrimination"...and that discrimination continues "to be a serious and pervasive social problem...[and] discrimination against individuals with disabilities continue to be a serious and pervasive social problem"..in such critical areas as employment, housing, public accommodations, education", and others. "individuals with disabilities continually  encounter various forms of discrimination", including in employment, and that they are "severely disadvantaged socially, vocationally, economically, and educationally".   "The Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity" including full participation in employment, and an opportunity to be able to compete on an equal basis in employment.  (42 USC sec. 12101 (a)(1-8)).

Similarly, New Hampshire's Law Against Discrimination, RSA 354-A, is a state law passed by the New Hampshire legislature that prohibits, among other things, disability-based employment discrimination and retaliation.  The legal standards which govern DeMoulas' conduct are the same under the ADA and 354-A.  For purposes of simplicity, I may refer in my instructions only to the ADA, but the same legal definitions and standards apply to RSA 354-A as well, unless otherwise stated.  You should assume, therefore, that my instructions apply to both laws; those instructions will govern your deliberations as to Ms. Artesi's claims under the

4

ADA and RSA 354-A.  As to the individual, Mr. Labatte, only NH RSA 354-A applies to his conduct.

The parties agree that DeMoulas is an employer covered by the ADA and RSA 354-A, that Mr. Labatte was an employee and agent of Ms. Artesi, and supervisory over her, and that Ms. Artesi was an employee of DeMoulas at all relevant times.

Ms. Artesi alleges that she was discriminated against by Defendants on the basis of her disability, due to their failure to grant her request for reasonable accommodation of a brief extension of her medical leave, and retaliated against her for taking that leave and requesting the extension, by terminating her employment of 29 years.  Ms. Artesi alleges that Dennis Labatte, the store's general manager, discriminated against her by aiding and abetting DeMoulas' discrimination and retaliation against her, contrary to RSA 354-A.   DeMoulas and Mr. Labatte deny  the allegations.

## AUTHORITY

42 U.S.C. §§ 12102, 12111-12117 (ADA); *Petition of Dunlap*, 134 N.H. 533, 539 (N.H. 1991) (experience of the federal courts in applying federal handicap discrimination law assists us in interpreting the similar proscription against handicap discrimination contained in 354-A). *See also* RSA 354-A:2 XV (d) (aiding and abetting discrimination).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 2**

**THE FAMILY AND MEDICAL LEAVE ACT OF 1993**

Congress passed the Family and Medical Leave Act in 1993 finding, among other things, that "there is inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." Congress stated that it was the purpose of the Act, among other things, "to entitle employees to take reasonable leave for medical reasons". Under the Family and Medical Leave Act, which is often referred to as the FMLA, an eligible employee is entitled to a total of 12 workweeks of unpaid leave per year if she has a serious health condition that makes her unable to perform the functions of her position.

Under the FMLA a serious health condition is one that involves continuing treatment by a health care provider and includes illnesses that result in a "period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment that involves…[t]reatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment." A chronic serious health condition is one that "(1) [r]equires periodic visits (defined as at least twice a year) for treatment by a health care provider…; (2) [c]ontinues over an extended period of time…; and (3) [m]ay cause episodic rather than a continuing period of incapacity…"

**AUTHORITY**

Family and Medical Leave Act of 1993; 29 C.F.R. § 825.113 and 825.115

**PLAINTIFF'S INSTRUCTION NO. 3**

**A CORPORATION ACTS THROUGH ITS EMPLOYEES**

DeMoulas is a corporation. A corporation may act only through persons such as its directors, officers, employees, or other agents. DeMoulas is responsible for any unlawful acts of its directors, officers, employees, or any other agents, made while acting within the scope of his or her employment. Any action by an employee, including an administrator, supervisor or other employee or any agent of DeMoulas constitutes an action by DeMoulas.   This includes responsibility for disability discrimination and retaliation in the workplace.

Therefore, DeMoulas is responsible for any unlawful acts of its employees or agents, while acting within the scope of the authority given them or within the scope of their duties.

Evidence that an act was done in the course of the business or operations of DeMoulas or by an administrator, employee, or agent in the course of his or her employment is sufficient for you to conclude that the act was authorized by DeMoulas.

Thus, if Ms. Artesi proves the existence of a discrimination or retaliation, based on disability, then under the law, DeMoulas would bear responsibility for the discrimination and retaliation, which Ms. Artesi claims includes failure to reasonably accommodate her disability and retaliation for requesting the reasonable accommodation, both or either of which led to her termination.

**AUTHORITY**

Adapted from Leonard B. Sand, *et al., Modern Federal Jury Instructions - Civil* (Vol. 4) Instruction 72-01 (2010). Restatement (Second) of Agency §219 (1958); *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S. Ct. 2275, 2284 (1998); *Chamberlin v. 101 Realty, Inc.,* 915 F.2d 777, 785 (1st Cir. 1990).

Restatement (Second) of Agency §219 (1958); New Hampshire Civil Jury Instruction §14.2.

**PLAINTIFF'S INSTRUCTION NO. 4**

**AIDING AND ABETTING AGAINST DENNIS LABATTE, INDIVIDUALLY**

Under NH RSA 354-A it is an unlawful discriminatory practice for an individual to aid or abet another to commit an unlawful discriminatory practice.  Plaintiff claims Defendant Dennis Labatte is individually liable for aiding or abetting Demoulas in the failure to grant a reasonable accommodation of a brief period of extended medical leave, and the resulting termination of Ms. Artesi's employment in retaliation for her request of extended leave.  If you find Mr. Labatte gave substantial assistance to DeMoulas in accomplishing the failure to accommodate or the retaliatory termination, and his own conduct, considered separately, constitutes a breach of duty to Ms. Artesi, then you should find him individually liable under NH RSA 354-A.

**AUTHORITY**

"Reading RSA 354–A:21, I(a) in conjunction with RSA 354–A:2, XV(d) and RSA 354–A:7, I, we conclude that any person may file a complaint against a *" person,* employer, labor organization, employment agency or public accommodation alleged to have committed the unlawful discriminatory practice," RSA 354–A:21, I(a) (emphasis added), of aiding and abetting discrimination in the workplace, RSA 354–A:2, XV(d); RSA 354–A:7, I. " 'Person' " is defined as including "one or more *individuals,* partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, trustees in bankruptcy, receivers, and the state and all political subdivisions, boards, and commissions thereof." RSA 354–A:2, XIII (emphasis added). Thus, individuals may be liable for aiding and abetting unlawful employment discrimination under RSA 354–A:2 and :7."

*U.S. Equal Emp't Opportunity Comm'n &a. v. Fred Fuller Oil Co.*, 134 A.3d 17, 20-21 (N.H. 2016)

NH RSA 354-A:2, XV(d): "(d) Aiding, abetting, inciting, compelling or coercing another or attempting to aid, abet, incite, compel or coerce another to commit an unlawful discriminatory practice or obstructing or preventing any person from complying with this chapter or any order issued under the authority of this chapter."

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 5**

**FAILURE TO ACCOMMODATE DISABILITY BY GRANTING REASONABLE ACCOMMODATION AND TO ENTER INTO INTERACTIVE PROCESS**

Ms. Artesi has made a claim that DeMoulas discriminated against her because of her disability by failing to provide her with a reasonable accommodation for her disability, by failing to extend her medical leave for a few weeks, and failed to engage in the interactive process to consider and determine whether this was an appropriate accommodation, or there was another reasonable accommodation.

The ADA and the New Hampshire statutory equivalent, RSA 354-A, require employers to provide reasonable accommodation to employees who are disabled, unless the accommodation would impose an undue hardship on the employer.

To succeed on her claim that DeMoulas has failed to provide a reasonable accommodation, Ms. Artesi must prove:

1. That the proposed accommodation would enable her to perform the essential functions of the job and that the accommodation is feasible for DeMoulas under the circumstances; and

2. That Ms. Artesi made a request for the accommodation that was sufficiently direct and specific so as to put DeMoulas on notice of the need for an accommodation.

To request accommodation, an individual may use "plain English" and need not mention the ADA or use the phrase "reasonable accommodation".[1]

---

[1] Authority: (*See, e.g., Schmidt v. Safeway Inc*., 864 F. Supp. 991, 997 (D. Or. 1994) ("statute does not require the plaintiff to speak any magic words. . . The employee need not mention the ADA or even the term 'accommodation.'"); *McGinnis v. Wonder Chemical Co.*, 1995 WL 756590 (E.D. Pa. 1995) (employer on notice that accommodation had been requested because: (1) employee told supervisor that his pain prevented him from working and (2) employee had requested leave under the Family and Medical Leave Act)..

If Ms. Artesi meets this burden, then DeMoulas bears the burden of proving that the accommodation Ms. Artesi's proposed accommodation would have been an undue burden. Ms. Artesi need not show that DeMoulas had discriminatory intent.

A reasonable accommodation is a modification or adjustment to the work environment or to the manner in which a job is performed. A reasonable accommodation may include: job restructuring; part time or modified work schedule; re-assignment to a vacant position; reallocation of marginal tasks to another employee; permitting the use of accrued paid leave or additional unpaid leave[2], and other similar accommodations for individuals with plaintiff's disabilities.

**INTERACTIVE PROCESS**

The ADA and New Hampshire statutory equivalent, RSA 354-A, also require employers to engage in an interactive process to determine a reasonable accommodation once the employer becomes aware of the disability of an employee.

To succeed on her claim that DeMoulas failed to engage in the interactive process, Ms. Artesi must prove:

1.    That DeMoulas was aware of Ms. Artesi's disability; and

2.    Despite knowing of her disability, DeMoulas failed to engage her in an interactive process to determine the best means of accommodating her disability.

---

[2] The Second Circuit has yet to weigh in on this issue [whether the (ADA) obligated an employer to provide an employee with a supplemental multi-month leave of absence after such employee exhausted the employee's entitlement to 12 weeks of leave under the Family Medical Leave Act], but other circuits, such as the First Circuit in *Garcia-Ayala v. Lederle Parentals, Inc.*, 212 F.3d 638 (2000), the Sixth Circuit in *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775 (1998), and the Tenth Circuit in *Rascon v. U.S. West Commc'ns, Inc.*, 143 F.3d 1324 (1998), *overruled on other grounds by New Hampshire v. Maine*, 532 U.S. 742 (2001), have stated that a medical leave of absence could constitute a reasonable accommodation under the ADA.

Engaging in an interactive process means that the employer needs to engage in an informal, meaningful dialogue with the employee regarding possible accommodations for the disability. If you find that DeMoulas did not engage in an interactive process, then you must find for Ms. Artesi.

**AUTHORITY**

First Circuit Draft Pattern Instructions; N.H. RSA 354-A; Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100 (1st Cir. 2005); Equal Opportunity Commission v. Kohl's Dept. Stores, Inc., 774 F.3d 127, 132 (1st Cir. 2014); EEOC document "Questions & Answers about Persons with Intellectual Disabilities in the Workplace and the American with Disabilities Act (ADA).

**REQUESTED INSTRUCTION NO. 6**

**SUBSTANCE ABUSE DISORDER, ALCOHOLISM, IS A DISABILITY OR
IMPAIRMENT COVERED BY THE ADA AND RSA 354-A**

The Court instructs you that Ms. Artesi is a person with a disability, within the meaning

of the ADA and RSA 354-A, including during the time she requested an accommodation of leave

for diagnosis and treatment.

**AUTHORITY**

There is no question that alcoholism is an impairment for purposes of the first prong of analysis under the ADA. *See Evans v. Fed. Express Corp.,* 133 F.3d 137, 139 (1st Cir. 1998); *see also Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown,* 294 F.3d 35, 46 (2d Cir. 2002), *petition for cert. filed,* 70 U.S.L.W. 3698 (May 03, 2002) (No. 01-1624); *Miners v. Cargill Communications, Inc.,* 113 F.3d 820, 823 n. 5 (8th Cir. 1997); *Office of the Senate Sergeant at Arms v. Office of Senate Fair Employment Practices,* 95 F.3d 1102, 1105 (Fed. Cir. 1996). This conclusion is reinforced by the statute's legislative history. *See* H.R. Rep. No. 101-485(II), at 51 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 333 (noting that "physical or mental impairment" includes "drug addiction and alcoholism"); *accord* H.R. Rep. No. 101-485(III), at 28 (1990), *reprinted in* 1990 U.S.C.C.A.N. 445, 451.

*Bailey v. Georgia-Pacific Corp.*, 306 F.3d 1162, 1167 (1st Cir. 2002).

12

**REQUESTED INSTRUCTION NO. 7**

**RETALIATION FOR REQUESTING REASONABLE ACCOMMODATION**

Ms. Artesi accuses DeMoulas of violating the ADA and RSA 354-A by retaliating against her for engaging in protected activity, specifically, for requesting a reasonable accommodation of a brief period of additional medical leave time to complete her recovery and rehabilitation for her Substance Abuse Disorder. Requesting an accommodation is a "protected activity." To succeed on this claim, Ms. Artesi must prove by a preponderance of the evidence:

1. She engaged in a protected activity under the statute by requesting an extension of her medical leave, which had been approved under the FMLA;

2. She was subjected to an adverse job action (in this case, she claims that the adverse job action was the termination of her employment, and the fact that a termination is an adverse job action is not in dispute); and

3. There is a "causal connection" between the two events (this fact is in dispute).

The term "causal connection" means a connection between the "adverse action" (in this case the termination of Ms. Artesi's employment) and the "protected activity" (in this case, Ms. Artesi's request for a reasonable accommodation of additional leave time).

Ms. Artesi may establish that the necessary "causal connection" exists to support her claim in this lawsuit by showing that the "adverse action" occurred soon after she engaged in the "protected activity." Temporal proximity between Ms. Artesi's request for a reasonable accommodation and her termination support the inference that her termination was retaliatory. I instruct you that the closer an adverse action occurs to a protected activity, the greater the inference that the employer was retaliating, therefore satisfying the causation requirement.

13

If you find that Ms. Artesi has established a "causal connection" between the "protected activity" and the termination of her employment, then it becomes your duty to determine the next issue, namely, did DeMoulas introduce evidence showing that it had a legitimate non-retaliatory reason for terminating Ms. Artesi's employment. However, even if DeMoulas introduces evidence of a non-retaliatory reason for the termination, Ms. Artesi may prove retaliation, by proving that the stated non-retaliatory reason for termination was a pretext (excuse).  Methods for demonstrating pretext include:

1.      Evidence that persons outside the protected class were treated better for offenses of comparable seriousness;

2.      Evidence of a departure from usual business procedures or a suspect practice or procedure;

3.      Evidence that the defendant's version of events contain numerous inconsistencies and conflicting documentary evidence rendering its story unreliable; or

4.      Evidence that the defendant's stated reason for the decision to terminate is false, contradictory, or implausible.

If you find that Ms. Artesi was terminated by DeMoulas for a legitimate non-retaliatory reason, and did not consider Ms. Artesi's request for a brief period of extended medical leave as a negative factor in making the decision to terminate her (that DeMoulas was not motivated, at least, in part, by Ms. Artesi's request for a reasonable accommodation), then you should decide in favor of DeMoulas on Ms. Artesi's claim of retaliation under the ADA.

Ms. Artesi need not prove that her request for a Reasonable Accommodation of taking additional medical leave was the sole or exclusive motivation for DeMoulas decision to terminate her, but if you find that DeMoulas was motivated, in part, by retaliation for this request in its decision to terminate her, then you must find for Ms. Artesi even though other factors also motivated the decision.

14

DeMoulas denies that Ms. Artesi's submission of repeated doctors' notes, and calls to DeMoulas, constitute the protected activity of requesting a reasonable accommodation of a brief extension of her medical leave.

Because disability is not an element of a retaliation claim under the ADA or 354-A, you are instructed that you must consider Ms. Artesi's claim of retaliation separate and apart from any other claim.  In other words, a retaliation claim is independent from, or is not tied to, a finding of discrimination.*  You can find there was no discrimination and still find there was retaliation; you can find there was discrimination and retaliation; and, you can also find that neither unlawful action occurred.

---

**AUTHORITY**

*Pattern Jury Instructions for Cases of Employment Discrimination (Disparate Treatment) for the District Courts of the US Court of Appeals for the First Circuit (5.1) (Updated 4/10/12); *Quiles - Quiles v. Henderson, Postmaster General*, 439 F. 3d 1,8 (1st Cir. 2006); *Soileau v. Guilford of Maine, Inc.,* 105 F.3d 12, 16 (1st Cir. 1997).

Jury Instructions, *McPadden v. Walmart Stores East, L.P. ,* No. 14-CV-475-SM (Request #8, FMLA-Retaliation) Source for "temporal proximity": *Hodgens v. Gen. Dynamics Corp*., 144 F.3d 151 (1st Cir. 1998); *Cooper v. Thompson Newspapers, Inc., 6 F. Supp. 2d 109, 1998 (D.N.H. 1998) citing Fennel v. First Step Designs, Ltd.*, 83 F.3d 526, 535-536 (1st Cir. 1996); *Cheng v. Idea Associates, Inc*., 2000 U.S. Dist. LEXIS 10517 ("a showing of adverse action soon after an employee engages in protected activity is evidence that there is a causal connection between the adverse action and the protected activity …such a causal connection creates and inference of retaliation");  *Rowlett v. Anheuser-Busch, Inc.*, 832 F.2d 194, 197, 202 (1st Cir. 1987) (finding nine months between complaint filing and discharge close enough to establish prima facie case of retaliation);  *Demont v. Affiliated Laboratory, Inc.*, 1996 U.S. Dist. LEXIS 13261 (D. Maine 1996), ("the closer an adverse action occurs to a protected activity, the greater the inference that the employer was retaliating, therefore satisfying the causation requirement.").

Examples of reasonable accommodation are as follows: see: Kvorjak v. Maine, 259 F.3d 48, 57 (1st Cir. 2001) (ADA) (work at home); Phelps v. Optima Health, Inc., 251 F.3d 21, 26-27 (1st Cir. 2001) (ADA) (job sharing and job creation); Reed v. LePage Bakeries, Inc., 244 F.3d 254, 260 (1st Cir. 2001) (ADA) ("permission to walk away from any stressful conflict"); Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 646 (1st Cir. 2000) (ADA) (additional leave beyond that allowed by the employer's leave policy); Ward v. Massachusetts Health Research

15

Institute, 209 F.3d 29, 37 (1st Cir. 2000) (ADA) (flexible work schedule); Soto-Ocasio v. Federal Express Corp., 150 F.3d 14, 20 (1st Cir. 1998) (ADA) (reallocation of job duties); Criado v. IBM Corp., 145 F.3d 437, 443 (1st Cir. 1998) (ADA) (leave of absence and leave extension); Equal Employment Opportunity Commission v. Amego, Inc., 110 F.3d 135, 147-48 (1st Cir. 1997) (ADA) (reallocation of job duties).

## PLAINTIFF'S REQUESTED INSTRUCTION NO. 8

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

There are two kinds of evidence; direct and circumstantial. Direct evidence is direct proof of a fact, such as testimony of an eyewitness. Circumstantial evidence is indirect evidence, that is, proof of a chain of facts from which you could determine that another fact exists, even though it has not been proved directly. It is evidence of a fact from which you can logically and rationally infer some other fact. You are entitled to consider both kinds of evidence. The law permits you to give equal weight to both, but it is for you to decide how much weight to give to any evidence, whether it be direct or circumstantial.

Keep in mind that in order to permit you to make a finding based solely on circumstantial evidence, it must make the finding not merely possible, but probable.

You should consider all the evidence, both circumstantial and direct, and make your determination based upon your evaluation of it.

It is for you to decide whether a fact has been proved by circumstantial evidence. In making that decision, you must consider all the evidence in light of reason, common sense and your experience.

You may find for Ms. Artesi on her claims in this lawsuit solely based on circumstantial evidence. You need not find any direct evidence in this case to find in favor of the Plaintiff, Ms. Artesi.

## AUTHORITY

*Hancock v. R. A. Earnhardt Textile Mach. Div.,* 139 N.H 356, 360, 653 A.2d 558, 560 (1995).

*Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) ("The reason for treating circumstantial and direct evidence alike is both clear and deep-rooted: Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence."); *Culver v. Gorman & Co.*, 416 F.3d 540 (7th Cir. 2005); *Sylvester v. SOS Children's*

17

*Villages Illinois, Inc.*, 453 F.3d 900 (7th Cir. 2006); *Rogers v. City of Chicago*, 320 F.3d 748 (8th Cir. 2003) (prior cases stand for proposition that evidence of retaliation may be direct or circumstantial);  As a general rule, the courts look at the natural consequences of employer action to determine intent.  See *Mead v. United States Fidelity & Guar. Co.*, 442 F.Supp. 114, 131, 18 FEP 140 (D. Minn. 1977);  *Armstrong v. Index Journal Co.*, 647 F.2d 441 (4th Cir. 1981); *Crawford v. Roadway Express, In*c., 485 F.Supp. 914 (W.D. Louisiana 1980) (prior cases stand for the proposition that an example of retaliatory motive would be an employer who treats the employee differently from other similarly situated employees subsequent to the employee's reporting of unethical and/or illegal conduct); *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 148 (2000); *Smith v. Lockheed-Martin Corp.,* 644 F.3d 1321 (11th Cir. 2011), *citing Silverman v. Bd. of Educ.*, 637 F.3d 729, 733 (7th Cir. 2011); *Sylvester v. SOS Children's Villages Illinois, Inc.*, 453 F.3d 900 (7th Cir. 2006).

**PLAINTIFFS REQUESTED INSTRUCTION NO. 9**

**DAMAGES**

The court has the obligation to instruct you as to the measure of damages in this case. By instructing you relative to the issue of damages, I do not mean to suggest in whose favor this case should be decided. The court maintains its neutrality throughout these proceedings. I am obligated, however, to give you complete instructions as to all the principles of law that are involved in this case.

In you find that the Plaintiff, Ms. Artesi, has proven either of her claims, failure to accommodate by granting a reasonable accommodation, or retaliation for requesting a reasonable accommodation, you should award her fair compensation for her injuries.  Ms. Artesi is entitled to recover fair and full compensation for all damage proximately resulting from the Defendants' actions. Fair compensation means compensation in value under currently existing economic conditions.

In determining the amount of damages to allow Ms. Artesi, you may draw such inferences as are justified by your common experiences and observations of mankind, and from the evidence of the nature of the injuries. You may also consider whether it is more probable than otherwise that Ms. Artesi's damages will continue into the future as a direct, natural and probable consequence of the Defendants' legal fault, and if so, award her full, fair and adequate compensation for those future damages.

The law does not require mathematical certainly in computing damages. However, your computation of the damage award must be supported by evidence; it cannot be based on speculation. Justice [.1]and public policy require, however, that a wrongdoer shall bear the risk of uncertainty that its own wrong has created and that prevents precise computation of damages.

You may not consider or speculate on whether the Ms. Artesi has received benefits from other sources in connection with her injuries. This includes, but is not limited to, welfare and unemployment compensation benefits. The law does not permit you to make any deduction

19

from the Plaintiff's damages to reflect benefits which may have been received from other

sources, because she may be required to repay them.

## AUTHORITY

*See* Great Lakes Aircraft v. Claremont, 135 N.H. 270 (1992); Lamontagne v. Lamontagne, 100 N.H. 237, 239 (1956); Rawson v. Bradshaw, 125 NH 94 (1984).

## PLAINTIFF'S REQUESTED INSTRUCTION NO. 10

### DAMAGES — BACK PAY

If you find that Ms. Artesi has proven that she was discharged in violation of the ADA or RSA 354-A, then she is entitled to recover an amount equal to the wages and fringe benefits se would have earned through employment with DeMoulas from the date of her termination, March 6, 2017, through the date of your verdict. This is referred to as "back pay." The term "back pay" includes not only wages, salary and fringe benefits, but also raises, vacation and sick pay, bonuses, cost-of-living increases, group life contributions, profit sharing benefits, and retirement or pension benefits.

To calculate the amount of "back pay" to which Ms. Artesi is entitled, you should first determine the wages and fringe benefits she would have received from DeMoulas from the time she was discharged on July 22, 2013, through the date of your verdict in this case. You should then subtract from this amount the wages and fringe benefits received by Ms. Artesi from other employment, *if any,* during this period of time. Ms. Artesi must prove the amount of her back pay damages by a preponderance of the evidence, but need not have proved her back pay claims with mathematical certainty.

### AUTHORITY

42 U.S.C. § 12117; RSA 354-A:21, II(d), :21-a, I; *Porter v. City of Manchester*, 151 N.H. 30, 39 (2004)( damages for wrongful termination include back pay, front pay, compensatory damages; no expert testimony is required; damages need not be proved with mathematical certainty).

21

## PLAINTIFF'S REQUESTED INSTRUCTION NO. 11
## DAMAGES — FRONT PAY

The purpose of future lost earnings is to restore Ms. Artesi to the position she would have been in had she not been wrongfully terminated.  She must provide those damages, like any other damages, with reasonable certainty, but not mathematical certainty.

If you find that Ms. Artesi has proven that she was discharged in violation of the ADA and/or RSA 354-A, the New Hampshire Law Against Discrimination, then you should also determine the amount of damages that would fairly compensate her for the amount of wages and fringe benefits she reasonably would have received in her employment with DeMoulas in the future (e.g. from the date of your verdict forward). This is referred to as "front pay."

Ms. Artesi has presented evidence of what she would have received in wages, overtime, bonuses and retirement benefits if she had remained employed by DeMoulas and had retired at her normal retirement age of 67.  To calculate the amount of front pay to which Ms. Artesi is entitled, you should determine the wages and fringe benefits she reasonably would have received from DeMoulas from the date of your verdict in this case until the date she would have left employment with DeMoulas, by retiring at the end of 2039. Front pay damages must be proven by a preponderance of the evidence. An award of front pay for future wages and fringe benefits necessarily requires that payment be made now for a loss that Ms. Artesi will not actually suffer until some future date.

### AUTHORITY

29 CFR 825.400; *0' Donnell v. Georgia Osteopathic Hospital*, 574 F. Supp. 214 (N.D. Ga. 1982), aff d. in pertinent part, 748 F.2d 543 (11th Cir. 1984); *Wildman v. Lerner Stores, Corp.,* 771 F.2nd 605, 616 (1st Cir. 1985); Jury Instructions, McPadden *v. Walmart Stores East, L.P.,* No. 14-CV-475-SM.

### PLAINTIFF'S PROPOSED INSTRUCTION NO. 12

### PLAINTIFF'S DUTY TO MITIGATE DAMAGES
**(Only to be given if Defendant Produces Substantial Evidence of Failure to Mitigate)**

Ms. Artesi has a duty under the law to mitigate her damages, that is, to exercise reasonable diligence under the circumstances to avoid or minimize those damages. If you find that DeMoulas proved, by a preponderance of the evidence, that Ms. Artesi unreasonably failed to take advantage of an opportunity to lessen her damages, you must reduce her damages by the amount of wages and fringe benefits she reasonably would have earned if she had sought out or taken advantage of such an opportunity.

Ms. Artesi was not required to seek out and accept any available employment. Rather, Ms. Artesi had a duty to use reasonable diligence in seeking and obtaining employment that was comparable to the position from which she was terminated.

Unlike other claims in this case DeMoulas has the burden of proving its claim that Ms. Artesi failed to mitigate her damages. I instruct you that the burden upon DeMoulas is very heavy. In order to prevail on this issue, DeMoulas must prove not only that there were further actions that Ms. Artesi could have taken in pursuit of appropriate employment which would have been successful, but also that the course that Ms. Artesi actually followed in seeking alternate employment was so deficient as to constitute an unreasonable failure to seek employment. Ms. Artesi is not to be held to extraordinary levels of diligence. She was not required to undertake an effort that was onerous and she was not required to be successful in her mitigation.

### AUTHORTIY

*EEOC v. Kallir, Philips, Ross, Inc.*, F. Supp. 919, 13 FEP 1508, 12 EPD Paragraph 11253 (S.D.N.Y. 1976), *aff'd*, 550 f.2d 1203 (2d Cir.), *cert. denied*, 434 U.S. 920 (1977); *Gelof*

23

*v. Papineau*, 648 F. Supp. 912, 928, 43 FEP 1299, 42 EPD Paragraph 36865 (D. Del. 1986), modified on other grounds, 829 F.2d 452, 45 FED 83, 45 EPD Paragraph 37704 (3d Cir. 1987); *Bonura v. Chase Manhattan Bank*, 629 F. Supp. 353, 43 FEP 163, 40 EPD Paragraph 36210 (S.D.N.Y. 1986) (holding burden on defendant to be "very heavy"), *aff'd on other grounds*, 795 F.2d 276 (2d Cir. 1986); *Koyen v. Con Ed. Co.*, 560 F. Supp. 1161, 1169 31 FEP 488, 33 EPD Paragraph 34189 (S.D.N.H. 1983) (Weinfeld, D.J.) ("It can hardly be disputed that at his age (68) the likelihood of re-employment is minimal."); *Marshall v. Arlene Knitweare*, 454 F. Supp. 715, 731, 17 FEP 1233, 17 EPD Paragraph 8477 (E.D.N.H. 1978), *aff'd in part, rev'd, in part*, without opinion, 608 F.2d 1369 (2d Cir. 1979).

24

**PLAINTIFF'S PROPOSED INSTRUCTION NO: 13**
**COMPENSATORY DAMAGES**

If you find that the Defendants violated the ADA, you must then determine whether Ms. Artesi is entitled to compensatory damages. Compensatory damages include the future monetary losses, emotional pain, suffering, inconvenience, mental anguish/suffering, loss of enjoyment of life and other non-monetary losses. You must determine the amount of compensatory damages she is to receive. Mental anguish includes the various forms that mental suffering may take, which will vary in each case with the person's nervous temperament, age, ability to stand shock, and the nature of the injuries. Mental worry, anguish, fright, shock, distress, anxiety, humiliation, indignity, embarrassment, apprehension and depression are proper components of that mental suffering for which the law entitles the injured party to recover in money damages. You may award compensatory damages only if Ms. Artesi has shown, by a preponderance of the evidence, that she suffered losses that were caused by Defendants' discriminatory conduct.

The law does not require that Ms. Artesi prove the amount of compensatory damages with mathematical precision. There is no exact standard for fixing the compensation to be awarded for these elements of damage. No evidence need be introduced regarding the monetary value of such intangible things as emotional pain, suffering, humiliation, embarrassment and mental anguish. you should consider the nature, character, and seriousness of any emotional distress that she felt. You must also consider its extent or duration. The damages you award must be fair compensation in light of the evidence.

You may award emotional distress damages to Ms. Artesi if she has proven any of her claims.

**AUTHORITY**

42 U.S.C. §1981a (Civil Rights Act of 1991); *McKinnon v. Kwong Wah Restaurant* 83 F.3d 498, 506 (1st Cir. 1996); *Carey v. Piphus*, 435 U.S. 247 (1978).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 14**

**ENHANCED COMPENSATORY DAMAGES/ N.H. RSA 354-A (STATE LAW DISABILITY DISCRIMINATION FAILURE TO ACCOMMODATE AND RETALIATION CLAIMS)**

If you find in favor of Ms. Artesi on her claim that Demoulas discriminated against her and retaliated against her in violation of New Hampshire's Law Against Discrimination, then you may also consider whether an award of enhanced compensatory damages is justified. Enhanced compensatory damages, unlike punitive damages, may not be awarded in an effort to punish the defendant. (I will address punitive damages next.) If you find Ms. Artesi suffered actual damages that were caused or substantially caused by the conduct of the Defendants, there are certain circumstances under which the law permits you, but does not require you, to consider an award of additional damages to reflect aggravating circumstances. These damages are called "enhanced damages" or "liberal compensatory damages." (*End NH Civil Jury Instructions 9.14*)*

If you find that Ms. Artesi suffered actual damages that were caused or substantially caused by the conduct of Defendants in violation of N.H. RSA 354-A (her state law disability and retaliation claims), you may also consider an award of additional damages to reflect aggravating circumstances.  A finding of wanton, malicious or oppressive conduct is not necessary. You need only find that Defendants' discriminatory conduct was taken with willful or reckless disregard of Ms. Artesi's rights under N.H. RSA 354-A.

**AUTHORITY**

2nd par.:  New Hampshire Civil Jury Instructions – 9.14 (modified for 354-A, so missing the malicious and oppressive language).

3rd par.: N.H. RSA 354-A:21-a(I) "...A court in cases so removed may award all damages and relief which could have been awarded by the commission, except that in lieu of an administrative fine, enhanced compensatory damages may be awarded when the court finds the respondent's discriminatory conduct to have been taken with willful or reckless disregard of the charging party's rights under this chapter..."

**PLAINTIFF'S PROPOSED INSTRUCTION NO: 15**

**PUNITIVE DAMAGES**

If you find in Ms. Artesi's favor on her federal ADA (disability) claims, you must consider whether an award of punitive damages is justified. Unlike the enhanced compensatory damages I told you about earlier which apply under the NH Law Against Discrimination, NH RSA 354-A, a federal statutory violation allows for the award of punitive damages. The purpose of punitive damages is to punish a defendant and to deter the defendant and others from committing similar acts in the future.

Intentional discrimination or retaliation alone is not enough to justify an award of punitive damages. You may award punitive damages only if you find that DeMoulas acted maliciously or with reckless indifference to Ms. Artesi's rights: her right not to be discriminated against because of her disability by failure to engage in the interactive process to determine a reasonable accommodation, and her right not to be retaliated against because of her ADA protected activity. Punitive damages may be awarded for the behavior of an employee serving in a managerial capacity and acting within the scope of his employment. Ms. Artesi has the burden of proving, by a preponderance of the evidence, that punitive damages should be awarded.

To recover punitive damages, Ms. Artesi must show, by a preponderance of the evidence, that DeMoulas knew that its discrimination and/or retaliation against her was illegal, or that DeMoulas acted in reckless disregard of the laws prohibiting discrimination and retaliation, that is intending to disregard what DeMoulas knew was a high probability that it was acting in violation of those laws. In deciding whether Ms. Artesi has made this showing, you may consider whether DeMoulas had any policies or training that would have made its employees aware of the laws prohibiting discrimination and retaliation. You may also consider whether the employees involved in the discriminatory or retaliatory conduct knew or should have known of the laws

prohibiting discrimination and retaliation by virtue of their positions in or experience with

DeMoulas.

If you find that punitive damages are justified, you must decide the amount of punitive

damages to award. Punitive damages should be in an amount sufficient to fulfill their purpose but

should not be based on bias, prejudice, or sympathy. In considering punitive damages, you may

consider the nature of DeMoulas' conduct and the harm, if any, inflicted on Ms. Artesi. A blank

space to enter the amount of punitive damages you award, if any, is provided on the verdict form.

### AUTHORITY

*See* 42 U.S.C. § 1981a(2) (providing for recovery of compensatory and punitive damages against defendant who violates § 102(b)(5) of ADA (42 U.S.C. § 12112(b)(5)) by failing to make reasonable accommodation). Punitive damages are not available against a public entity in suits brought under 42 U.S.C. § 12132. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002). 42 U.S.C. § 1981a(b)(3); § 12117(a); and § 1981a(a)(3)

*Kolstad v. American Dental Ass'n*, 527 U.S. 526 (1999); *Powell v. Alexander*, 391 F.3d 1, 15 (1st Cir. 2004); *McKinnon v. Kwong Wah Restaurant,* 83 F.3d 498, 506 (1st Cir. 1996); *Provencher v. CVS Pharmacy*, 145 F.3d 5, 11-12 (1st Cir. 1998); *Iacobucci v. Bouleter*, 193 F.3d 14, 25-26 (1st Cir. 1999); *EEOC v. Wal-Mart Stores, Inc.*, 187 F. 3d 1241, 1244-45 (10th Cir. 1999).

## PLAINTIFF'S REQUESTED INSTRUCTION NO. 16

### WILLFULNESS

Next, it is your job to determine whether if Ms. Artesi has proven either of her claims under the federal ADA law, whether DeMoulas' acts of disability discrimination were conducted with knowledge, or reason to know, that such acts violated the law. In responding to this question, you may consider the totality of the evidence. For example, you may consider evidence that the Defendant has articulated one or more "sham" reasons for its conduct, because making up a reason could show that the Defendant knew that its true reason was unlawful. Furthermore, you may consider evidence that the Defendant's agents and/or employees knew that disability discrimination was illegal at the time that it acted.

In addition, you may consider the violation to be willful if "the employer knew or showed a reckless disregard for the matter of whether the conduct was prohibited by the [ADA]". * You will be asked to note on the Special Verdict Form whether you find that the Defendant's conduct was willful.

### AUTHORITY

G.L. c. 151B, § 9 (multiplied damages awarded where there the employer has knowledge or reason to know, that its act constituted age discrimination); *Koster v. Trans World Airlines, Inc.,* 181 F.3d 24, 37 (1st Cir. 1999) (evidence of pretext and that decision-makers knew of policy forbidding age discrimination was satisfactory for finding that employer that engaged in age discrimination did so "with knowledge or reason to know" the illegality of its acts).

29

**PLAINTIFF'S REQUESTED INSTRUCTION NO. 17**

**DIFFICULTY CALCULATING DAMAGES**

If you decide that damages are appropriate, Ms. Artesi is entitled to damages even if the amount is difficult to calculate. While damages do not have to be calculated using mathematical precision, a Plaintiff must provide sufficient evidence that he suffered damages so you don't have to just blindly guess. Justice and public policy require, however, that a wrongdoer shall bear the risk of uncertainty that its own wrong has created and that prevents precise computation of damages.

*AUTHORITY: Bigelow v. RICO Radio Pictures,* 327 U.S. 251, 264-65 (1946); *Cordeco Dev. Corp. v. Santiago Vasquez,* 539 F.2d 256, 262 (1st Cir. 1976); *Sir Speedy, Inc. v. L & P Graphics, Inc.,* 957 F.2d 1033, 1038 (2d Cir. 1992).

**PLAINTIFF'S REQUESTED INSTRUCTION NO. 18**

**CONSIDER TOTALITY OF THE EVIDENCE**

When deciding whether age discrimination occurred, you must consider the totality of the evidence. That means that you may consider things that happened, and statements that were made. These occurrences may be relevant to your decision as to the reason why **Ms. Artesi's** job duties were taken from him and given to a younger worker, which he alleges led to his constructive discharge. You may also consider whether Ms. Artesi was treated differently than another, younger employee or employees. Finally, you may consider whether the Defendant took steps to hide its true motive.

**AUTHORITY**

*United Air Lines, Inc. v. Evans,* 431 U.S. 533 (1977); *Williams v. Frank,* 757 F. Supp. 112, 118 (D. Mass. 1991) ("employer's prior treatment of plaintiff is relevant to a showing of pretext"); *Brown v. Trustees of Boston University,* 891 F.2d 337, 349 (1st Cir. 1989) (past acts of discrimination are relevant under Fed. R. Evid. 404(b)); *Sinai v. New England Tel & Tel Co.,* 53 FEP Cases, at 1885; *Lamphere v. Brown University,* 685 F.2d 743, 747 (1st Cir. 1982); *Marsman v. Western Electric Co.,* 719 F. Supp. 1128, 1135 (D. Mass. 1988).

*Bloomfield v. Bernardi Auto Mall Trust,* 170 F. Supp. 2d 36, 44 (D. Mass. 2001) (altering documents after the fact may help demonstrate pretext for discrimination).

31

**PLAINTIFFS REQUESTED INSTRUCTION NO. 19**

**INTERROGATORIES**

**[Plaintiff proposes that this instruction be given when an Interrogatory is read into the record and again at the close of testimony]**

You have heard and seen evidence in this case in the form of interrogatories. Interrogatories are written questions that one party in the case asks of the other party. The party answering the questions must do so in writing and under oath. Both the questions and answers are made before trial. Each side is entitled to ask these questions of one another.

You may consider answers to interrogatories as evidence against the party who answered just as you would any other evidence which has been admitted in this case.

You are not required to conclude that a party's answers to interrogatories are true. You are not required to give them more weight than any other evidence. It is up to you to determine what weight, if any, should be given to the answers which have been admitted as evidence.

**AUTHORITY**

Adopted from Leonard B. Sand, *et al., Modern Federal Jury Instructions* - Civil (Vol. 4) Instruction 74-13 (2010); *Rosenthal v. Poland,* 337 F. Supp. 1161, 1170 (S.D.N.Y. 1972).

## PLAINTIFF'S REQUESTED INSTRUCTION NO. 20

### DEPOSITION TESTIMONY

**[Plaintiffs propose that this instruction be given when deposition testimony is read into the record and again at the close of testimony]**

You have heard and seen testimony from a previously conducted deposition. A deposition occurs before trial and allows lawyers for each side to ask questions of witnesses or opposing parties. A deposition is recorded by a court reporter and the witness swears to give truthful answers to the questions asked.

Under some circumstances, when a witness is not able to testify from the witness stand, that witness' previous deposition testimony may be read to you at trial. In other circumstances, deposition testimony may be presented to show that the witness previously testified in a way that differs from her testimony at trial.

You should give deposition testimony the same consideration you would to any other testimony and you can judge whether or not you believe that testimony.

### AUTHORITY

Adopted from Leonard B. Sand, *et al., Modern Federal Jury Instructions* - Civil (Vol. 4) Instruction 74-14 (2010).

**REQUESTED INSTRUCTION NO. 21**

**CATEGORIES OF DAMAGES STATED ON SPECIAL VERDICT FORM**

When this case is submitted to you for deliberation, you will receive a Special Verdict Form which will ask you individually about each of the claims in this case and ask you to determine monetary damages for each individual claim.

You should consider each individual claim separately, and if you find in Ms. Artesi's favor on any claim, you should award her those damages that you find to be appropriate for each individual claim on which you find in Ms. Artesi's favor.

_____

**AUTHORITY**

New Hampshire Civil Jury Instructions § 8.2.

34

## REQUESTED INSTRUCTION NO. 22

## MULTIPLE THEORIES OF RECOVERY

Ms. Artesi has asserted two different claims in this case, discriminatory failure to accommodate her disability and retaliation for requesting reasonable accommodation.  During your deliberations, you should consider each of Ms. Artesi's claims separately.  You may find in Ms. Artesi's favor on one or more of her claims, or none of her claims.

---

### AUTHORITY

*Lattimore v. Polaroid Corp.*, 99 F.3d 456 (1st Cir.1996) (citing *Sunkist Growers, Inc. v. Winckler & Smith Citrus Products Co.,* 370 U.S. 19, 29-30, (1962).